## LEASE ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS LEASE ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "Agreement") is made as of this ___ day of September, 2011 (the "Closing Date"), by and among (i) ALABAMA AIRCRAFT INDUSTRIES, INC., ALABAMA AIRCRAFT INDUSTRIES, INC.-BIRMINGHAM and PEMCO AIRCRAFT ENGINEERING SERVICES, INC., (the "Debtors" or "Assignors"), and (ii) KAISER AIRCRAFT INDUSTRIES, INC. ("Kaiser" or "Assignee").

### R E C I T A L S :

**WHEREAS,** one or more of the Assignors is a lessee under the lease agreements (the "Leases") attached hereto as **Exhibit A**,

**WHEREAS,** each of the Leases is an unexpired lease within the meaning of section 365 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS,** on February 15, 2011, each of the Assignors filed a voluntary petition for relief under title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered under Case No. 11-10452 (the "Bankruptcy Case");

**WHEREAS,** pursuant to an Asset Purchase Agreement dated as of August 19, 2011 (the "APA"), between the Debtors and Kaiser, the parties have agreed that Kaiser shall acquire substantially all of the operating assets, and assume certain liabilities, of the Debtors;

**WHEREAS,** the Debtors filed a motion (the "Sale Motion") with the Bankruptcy Court on August 19, 2011 seeking entry of an order authorizing the Debtors to enter into and perform the APA;

**WHEREAS,** the Bankruptcy Court entered an order granting the Sale Motion on August __, 2011 (the "Sale Order");

**WHEREAS,** the Sale Order determined the amount of the cure payments (the "Cure Costs") due to each of the non-debtor parties to a Lease as set forth on Exhibit A;

**WHEREAS,** a condition to Kaiser's obligation to close under the APA is the execution and delivery of this Agreement;

**WHEREAS,** subject to the terms and conditions set forth herein, Assignee wishes to acquire from Assignors all of Assignors' right, title, interest, duties and obligations to and under the Leases, in accordance with the terms of this Agreement, and Assignors wish to assign and delegate to Assignee all of Assignors' right, title, interest, duties and obligations to and under the Leases; and

**WHEREAS,** the Debtors and Kaiser are deriving material incidental benefits by the consummation of the transactions contemplated by the APA.

## NOW, THEREFORE, THE PARTIES HERETO AGREE AS FOLLOWS:

1. **Defined Terms.** Capitalized terms used and not defined herein shall have the meanings ascribed to them in the APA.

2. **Assumption and Assignment of the Leases.**

    2.1   Agreement to Assume and Assign the Leases. Assignors hereby sell, convey, transfer, assign and deliver to Assignee and its successors and assigns, all of Assignors' right, title and interest in and to the Leases and Assignee hereby assumes and agrees to discharge or perform when due in accordance with their respective terms and subject to the respective conditions thereof, the Leases.

    2.2   Possession. Subject to the terms and conditions of this Agreement, Assignee shall be entitled to possession, use and enjoyment of the premises subject to the terms of each of the Leases from and after the Closing Date.

    2.3   Risk of Loss. On and after the Closing Date, all risk of casualty loss including, but not limited to, water or fire loss with respect to each of the Leases shall pass to Assignee and Assignee shall be solely responsible for providing insurance to cover any risk of such loss or damage to the facilities subject to the Leases, to the extent that the Leases impose such liability upon the Lessee.

3. **Terms of Assignment.** Notwithstanding any other provision of this Agreement to the contrary, nothing contained in this Agreement shall in any way supersede, merge with, modify, replace, amend, change, rescind, waive, exceed, expand, enlarge or in any way affect the provisions set forth in the APA nor shall this Agreement reduce, expand or enlarge any remedies under the APA. This Agreement is intended only to evidence the sale, transfer, assignment, conveyance and delivery of the Leases as of the Closing Date pursuant to the APA and shall be governed entirely in accordance with the terms and conditions of the APA. The terms of the APA, including but not limited to the Assignors' representations, warranties, covenants, agreements and indemnities relating to the Leases, are incorporated herein by this reference. In the event of a conflict or an inconsistency between this Agreement and the APA, the terms of the APA shall prevail.

4. **Miscellaneous.**

    4.1   Assignment. This Agreement may not be assigned without the prior written consent of each of the parties hereto.

4.2    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware applicable to contracts made and performed in such State.

4.3    Submission to Jurisdiction; Consent to Service of Process. Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 10.6 hereof; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the courts of the State of Delaware, and any appellate court thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 10.6.

4.4    Entire Agreement. This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby and supersedes any prior instruments, arrangements and understandings relating to the subject matter hereof.

4.5    Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

4.6    Notices. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand, (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one (1) Business Day following the day sent by overnight courier (with written confirmation of receipt), in each case at the notice addresses set forth in the APA.

4.7    Additional Documents. Each party agrees to perform any further acts and execute and deliver such further documents which may be reasonably necessary to carry out the terms of this Agreement.

4.8    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A signature sent by facsimile transmission or electronic mail on a counterpart signature page shall be considered as binding and as admissible in evidence as a manual signature.

[ASSET PURCHASE AGREEMENT – EXHIBIT C]

[SIGNATURE PAGE TO FOLLOW

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date first above written.

**ASSIGNORS:**

ALABAMA AIRCRAFT, INC.

By:_____
      Name:_____
      Title:_____

ALABAMA AIRCRAFT – BIRMINGHAM, INC.

By:_____
      Name:_____
      Title:_____

      PEMCO ENGINEERING SERVICES, INC.

By:_____
      Name:_____
      Title:_____

**ASSIGNEE:**

KAISER AIRCRAFT INDUSTRIES, INC.

By:_____
      Name:_____
      Title:_____

## APA Exhibit D

**PROPOSED ORDER [OMITTED]**

**EXHIBIT B**

**LITIGATION TRUST AGREEMENT**

## LITIGATION TRUST AGREEMENT

This Litigation Trust Agreement (this "Agreement"), is made and entered into as of the Closing Date (as defined below) by and among Alabama Aircraft Industries, Inc., a Delaware corporation ("AAII"), Alabama Aircraft Industries, Inc.–Birmingham, an Alabama corporation ("AAII-Birmingham"), Pemco Aircraft Engineering Services, Inc., a Delaware corporation ("Pemco" and, together with AAII and AAII-Birmingham, the "Debtors"), Kaiser Aircraft Industries, Inc., a Delaware corporation ("Purchaser"), and _____ (together with any successor trustee appointed under the terms hereof, the "Trustee"), to establish a litigation trust (the "Litigation Trust") pursuant to the Purchase Agreement (as defined below) for the sole benefit of the Beneficiaries. The following recitals form the basis of and are a material part of this Agreement.

## RECITALS

A.    The Debtors are the debtors and debtors in possession in the voluntary case under Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 11-10452 (the "Bankruptcy Case").

B.    The Debtors and the Purchaser are parties to that certain Asset Purchase Agreement, dated as of August 19, 2011 (the "Purchase Agreement"), pursuant to which the Purchaser is purchasing substantially all of the operating assets of the Debtors.

C.    The Purchase Agreement provides for the establishment of a Litigation Trust upon the closing date of the transactions contemplated by the Purchase Agreement (the "Closing Date") for the sole purpose of liquidating and distributing the Trust Assets for the benefit of the Beneficiaries. This Agreement is entered into pursuant to the Purchase Agreement to establish the Litigation Trust as of the Closing Date.

D.    The Litigation Trust as outlined in the Purchase Agreement and more particularly described in this Agreement is for the sole purpose of prosecuting, administering, liquidating and distributing the Trust Assets for the benefit of the Beneficiaries as a liquidating trust in accordance with 26 C.F.R. § 301.7701-4(d) and Revenue Procedure 94-45, 1994-28 C.B. 124, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust, and is intended to qualify as a "grantor trust" for U.S. federal income tax purposes, pursuant to Sections 671-677 of the Internal Revenue Code of 1986, as amended, with the Beneficiaries treated as the grantors and owners of the Trust Assets.

E.    The Trustee has agreed to act as Trustee under this Agreement and to accept and manage the Trust Assets as Trustee upon and subject to the terms and conditions set forth herein, in the Purchase Agreement, and in the Sale Order (as defined below).

NOW, THEREFORE, in consideration of the premises and mutual covenants and agreements contained herein, the Debtors and the Trustee agree as follows:

134835.7

# ARTICLE I
## DEFINITIONS

1.1     Definitions.  The following terms shall have the meanings ascribed to them below for all purposes under this Agreement:

"Accounts Receivable" has the meaning ascribed thereto in the Purchase Agreement.

"Advance" has the meaning set forth in Section 2.4.

"Affiliate" means, with respect to a specified Person, any Person controlling, controlled by, or under common control with such Person.  The term "control," as used in the immediately preceding sentence, means, the right to exercise, directly or indirectly, fifty percent (50%) or more of the voting rights attributable to the controlled entity or the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the controlled entity.

"Available Cash" means those Trust Assets that constitute Cash, after payment or reimbursement of the fees, costs and expenses of administering the Litigation Trust, including, without limitation, reimbursement of any Advances, as provided in this Agreement.

"Bankruptcy Case" has the meaning set forth in the Recitals hereto.

"Bankruptcy Code" has the meaning set forth in the Recitals hereto.

"Bankruptcy Court" has the meaning set forth in the Recitals hereto.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as promulgated under Section 2075, Title 28, United States Code and as amended from time to time, as supplemented by the local rules of the Bankruptcy Court.

"Beneficiary" means any holder of Beneficial Interests.

"Beneficial Interests" means, collectively the Series A Interests and the Series B Interests.

"Boeing Parties" means the Boeing Company and its Affiliates.

"Business Day" means any day except for Saturday, Sunday or a "legal holiday" (as defined in Fed. R. Bankr. P. 9006(a)).

"Cash" means cash and cash equivalents.

"Causes of Action" means, without limitation, any and all of the Debtors' actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims, and demands whatsoever, including causes of action of the Debtors' bankruptcy estates arising under Chapter 5 of the Bankruptcy Code, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or

unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Closing Date.

"Claim" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

"Debtors" has the meaning set forth in the Preamble hereto.

"Distribution" means any distribution of Available Cash to be made to Beneficiaries pursuant to this Agreement.

"Distribution Allocation" means ninety percent (90%), on account of the Series A Interests, and ten percent (10%), on account of the Series B Interests.

"Distribution Date" means any date on which a distribution is to be made under this Agreement, and means (i) initially, the Initial Distribution Date, and (ii) subsequently, such other date(s) as the Trustee may establish from time to time in accordance herewith to make any Distribution.

"Estates" means the estates created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code upon commencement of the Bankruptcy Case.

"Final Order" means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or the Trustee, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

"Gross Amount" has the meaning set forth in Section 5.2(e)(i).

"Gross Series B Amount" has the meaning set forth in Section 5.2(e)(ii).

"Initial Distribution Date" means the first Business Day, or as soon thereafter as reasonably practicable, following the ultimate conclusion, by Final Order or settlement, of a material amount of the Trust Causes of Action.

"IRS" means the United States Internal Revenue Service.

"Lien" has the meaning set forth in Section 101 of the Bankruptcy Code.

"Offset Amount" has the meaning set forth in Section 5.2(e).

"Offset Rights" means any existing setoff rights of the Boeing Parties against a Trust Cause of Action.

"Oversight Committee" means the Litigation Trust Oversight Committee established pursuant to this Agreement to advise and direct the Trustee in litigation matters related to the Trust Causes of Action.

"Permitted Investments" is defined in Section 3.4(c).

"Person" means and includes a natural person, individual, partnership, corporation (as defined in Section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of the Debtors or an affiliate of the Debtors; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that is a governmental plan, as defined in Section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in Section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of Section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Professionals" means all professionals employed post-Closing Date pursuant to the terms of this Agreement.

"Purchase Agreement" has the meaning set forth in the Recitals hereto.

"Purchaser" has the meaning set forth in the Preamble hereto.

"Sale Order" means the order of the Bankruptcy Court approving the Purchase Agreement and authorizing the Debtors to consummate the transactions contemplated thereby and hereby.

"Series A Interests" means the beneficial interests in the Litigation Trust to be issued to the Beneficiary(ies) set forth on Exhibit A hereto, which entitles its holder to receive distributions from the Trust Assets, if any, as provided in this Agreement.

"Series B Interests" means the beneficial interests in the Litigation Trust to be issued to the Beneficiary(ies) set forth on Exhibit A hereto, which entitles its holder to receive distributions from the Trust Assets, if any, as provided in this Agreement.

"Tax Code" means the Internal Revenue Code of 1986, as amended.

"Termination Date" is defined in Section 9.1.

"Treasury Regulation" means any regulation promulgated by the United States Department of the Treasury, including any temporary regulations from time to time promulgated under the Tax Code.

"Trust Assets" means the Trust Causes of Action and all proceeds thereof. For the avoidance of doubt, the GECAS Judgment (as such term is defined in the Purchase Agreement) shall not be a Trust Asset.

"Trust Causes of Action" means all Causes of Action of the Debtors or their estates, but specifically excluding any Causes of Action of the Debtors relating to (i) warranty claims or breach of contract claims with respect to Inventory, Furniture and Equipment that constitute Purchased Assets, (ii) the collection of any Accounts Receivable or other similar rights of collection, including the Debtors' rights to collect Work in Process as set forth in the Purchase Agreement, (iii) Avoidance Actions, (iv) the GECAS Judgment, (v) Causes of Action specifically identified and allocated between Purchaser and the Debtors pursuant to the Purchase Agreement, (vi) claims of the Debtors against any current or former officer or director of the Debtors, and (vii) this Agreement.

"Trustee" has the meaning set forth in the Preamble hereto.

Capitalized terms used but not otherwise defined above or elsewhere in this Agreement shall have the meanings ascribed to them by the Purchase Agreement. Capitalized terms used but not otherwise defined in this Agreement or the Purchase Agreement shall have the meanings ascribed to them by the Bankruptcy Code.

## ARTICLE II
## ESTABLISHMENT OF THE LITIGATION TRUST

2.1     Transfer of Assets to Litigation Trust.

(a)     The Debtors and the Trustee hereby establish the Litigation Trust on behalf, and for the sole and exclusive benefit, of the Beneficiaries. The Debtors shall (and hereby do) vest in the Litigation Trust, as a representative of the Estates, the Trust Assets for the benefit and on behalf of the Beneficiaries. The Trustee hereby agrees to accept and hold the Trust Assets in the Litigation Trust for the sole and exclusive benefit of the Beneficiaries, subject to the terms of the Purchase Agreement and this Agreement. Upon the transfer of the Trust Assets to the Litigation Trust, the Debtors shall have no interest in, or with respect to, the Trust Assets other than their Beneficial Interest. The vesting of the Trust Assets in and for the benefit of the Litigation Trust is free and clear of all Liens, claims, interests and encumbrances, except to the extent expressly provided to the contrary in the Purchase Agreement. Subject to Section 5.2(e), any Liens, claims, interests or other encumbrances asserted by any party against the Trust Causes of Action shall attach to the Beneficial Interests granted the Debtors' estates (but not the Beneficial Interests granted to the Purchaser) with the same validity, force, priority and effect as the same had with respect to the Trust Causes of Action, subject to any and all defenses, claims and/or counterclaims or setoffs that the Debtors or their estates may have with respect to such Liens, claims, interests or encumbrances.

(b)     The Trust Assets shall be valued consistently pursuant to <u>Article VII</u> of this Agreement, and those valuations shall be used for all U.S. federal income tax purposes. Such valuation shall be made available from time to time, to the extent relevant, and used consistently by all parties (including without limitation the Trustee and the Beneficiaries) for all federal income tax purposes.

(c)     In furtherance of <u>Section 11.1</u> of this Agreement, the Litigation Trust shall provide reasonable access to the books and records in its possession to such individuals or entities as may be necessary to effectuate the Purchase Agreement and the transactions contemplated by the Purchase Agreement. Any attorney-client privilege, work-product privilege or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Litigation Trust shall vest exclusively in the Trustee and the Trustee's representatives, and the Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges. After the Closing Date, no person other than the Trustee may assert or waive any privilege of the Debtors or the Estates or to make any admission or statement against interest respecting the Debtors or the Estates in any matter relating to the Trust Assets or any of them.

(d)     The Litigation Trust is irrevocable.

2.2     <u>Intention of Parties</u>.  All parties intend to create a liquidating trust in accordance with Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-28 C.B. 124, which shall be treated as a grantor trust for United States federal income tax purposes pursuant to Sections 671-677 of the Tax Code.  The Beneficiaries shall be treated as the grantors and donors of a grantor trust for U.S. federal income tax purposes.

2.3     <u>Purpose of Litigation Trust</u>.  Subject to <u>Section 9.1</u>, the Litigation Trust shall continue in existence so long as necessary for the purpose of liquidating the Trust Assets, in accordance with Treasury Regulation § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  Consistent with such objective, the Trustee, in an orderly manner and subject to the provisions of the Purchase Agreement and this Agreement, shall:

(a)     make all Distributions to the Beneficiaries;

(b)     satisfy its obligations under the Purchase Agreement and this Agreement; and

(c)     file appropriate tax returns in accordance with <u>Article VII</u> of this Agreement and the terms and conditions of the Purchase Agreement.

2.4     <u>Funding of the Litigation Trust</u>.  If and to the extent that the Trustee has incurred fees, costs and expenses on behalf of the Litigation Trust that are then due and payable, the Trustee may request an advance (each, an "<u>Advance</u>") of such funds from the Purchaser.  The Purchaser may, but shall not be obligated to, make such Advance.  All outstanding Advances shall be reimbursed to the Purchaser from the Cash generated by the Trust Assets prior to the making of any Distributions.

ARTICLE III
TRUSTEE

3.1     Appointment.  The Debtors hereby designate and appoint _____ to serve as the initial Trustee, and _____ hereby accepts such designation and appointment and agrees to serve in such capacity, as of the Closing Date.

3.2     Generally.  The Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the Litigation Trust and not otherwise. The Trustee shall have the authority to bind the Litigation Trust, but shall for all purposes hereunder be acting in the capacity as Trustee, and not individually.  The Trustee shall owe a fiduciary duty to the Beneficiaries.  The Trustee may be a Beneficiary of the Trust and shall not be disqualified from acting as Trustee under this Agreement or from performing any of the duties of Trustee, or from exercising the rights, powers and remedies granted under this Agreement because Trustee is a Beneficiary of the Trust.

3.3     Rights and Powers of the Trustee.

(a)     The Trustee shall have all the rights, powers and duties necessary to carry out its responsibilities under this Agreement.

(b)     In exercising its rights and powers and carrying out its duties under this Agreement, the Trustee shall have the authority to retain such professionals (including, without limitation, disbursing and transfer agents, legal counsel and/or other agents or advisors) on the Trustee's own behalf and on behalf of the Trust, as the Trustee deems appropriate and compensate such professionals from the Trust Assets on customary terms reasonably acceptable to the Trustee, without any requirement of approval by the Bankruptcy Court, subject to the terms of Section 3.8 of this Agreement.  Professionals so retained are not required to be "disinterested persons" (as such term is defined in the Bankruptcy Code) and may include, without limitation, counsel or financial advisors to the Debtors.

(c)     The Trustee shall have discretion to pursue or not to pursue, and settle or not settle, the Trust Causes of Action, as it determines are in the best interests of the Beneficiaries and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of its decision, provided, however, that the Trustee (i) shall consult with the Oversight Committee on all matters relating to the Trust Causes of Action and (ii) may not agree to settle or otherwise resolve any material matter that would reasonably be expected to have an impact on the economic value of the Beneficial Interests relating to any Trust Cause of Action without first obtaining ($x$) the consent of the Oversight Committee or ($y$) an order from the Bankruptcy Court authorizing such settlement or other action.  In connection with seeking any such order, the Trustee shall provide to the Oversight Committee notice of and a copy of any motion requesting such an order.

3.4     Scope of Trustee's Duties.  The duties of the Trustee shall include, but shall not be limited to:

(a)     investigating, prosecuting, settling or abandoning any of the Trust Causes of Action, with the advice and consent of the Oversight Committee.

(b)      preparing and circulating such reports as the Trustee deems advisable.

(c)      investing the Cash held in the Litigation Trust as permitted by Section 345 of the Bankruptcy Code (collectively, the "Permitted Investments"); provided, however, that the scope of the Permitted Investments shall be limited to include only demand and time deposits, including, without limitation, short-term certificates of deposit in banks or other savings institutions or other temporary, liquid investments such as U.S. Treasury Bills, and those investments that a liquidating trust, within the meaning of Treasury Regulation § 301.7701-4(d), may be permitted to invest in, pursuant to the Treasury Regulations and Rev. Proc. 94-45, 1994-28 C.B. 124, or any modification in IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

(d)      calculating and paying all Distributions to be made by the Trustee under this Agreement, the Purchase Agreement and other orders of the Bankruptcy Court to the Beneficiaries.

(e)      taking all other actions necessary or appropriate to implement or consummate this Agreement.

(f)      filing any and all tax and information returns with respect to the Litigation Trust consistent with the treatment of the Litigation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and paying taxes properly payable by the Litigation Trust, if any, and making Distributions to Beneficiaries net of any such taxes.

(g)      complying with the provisions of this Agreement.

(h)      undertaking such other responsibilities as may be appropriate to carry out the provisions of this Agreement and performing all obligations to be performed by and assuming all obligations to be assumed by the Litigation Trust under the Purchase Agreement.

3.5      Limitation of Trustee's Authority. Except as otherwise provided in the Purchase Agreement and the Sale Order, the Trustee shall not and is not authorized to engage in any trade or business with respect to the Trust Assets or any proceeds therefrom or take any action, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust or as permitted under this Agreement, and shall take such actions consistent with the orderly distribution of the Trust Assets as is required by applicable law and consistent with the treatment of the Litigation Trust as a liquidating trust under Treasury Regulation § 301.7701-4(d) and Revenue Procedure 94-45, 1994-28 C.B. 124, and such actions permitted herein. Nothing in this Agreement shall preclude the Trustee, if the Trustee is a Beneficiary of the Trust, from receiving any distribution of property hereunder to which it is entitled pursuant to the Purchase Agreement, the Sale Order and this Agreement.

3.6      Liability of Trustee.

(a)      Except as otherwise specifically provided herein, the Trustee or the individuals comprising the Trustee, as the case may be, and the Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of,

this Litigation Trust and the Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts.

(b)     The Trustee shall not be liable for interest or obligated to produce income on any assets received by the Litigation Trust hereunder and held for Distribution or payment to the Beneficiaries, except for such interest or other income actually received by the Trustee.

(c)     Nothing in this Section 3.6 shall be deemed to shield the Trustee from liability with respect to the assessment of fines or penalties against the Trustee which may be assessed by any government agency for failure to comply with applicable law.

3.7     Reliance by Trustee.

(a)     Except as otherwise provided in Section 3.6 hereof (i) the Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties; and (ii) the Trustee may consult with accounting advisors and other professionals to be selected by it, and the Trustee shall not be liable for any action taken or omitted to be taken by it in accordance with the advice thereof.

(b)     If the Trustee is unsure of the application of any provision of this Agreement or any other agreement relating to the transactions contemplated hereby, the Trustee may, but shall be under no duty to, take or refrain from taking such action as it shall deem advisable in the best interests of the Litigation Trust and the Beneficiaries, subject to the advice and consent of the Oversight Committee.

3.8     Compensation of the Trustee; Reimbursement of Costs and Expenses of Trust Administration.

(a)     Compensation; Fee for Services.  If, and for so long as, the Trustee is an Affiliate of the Purchaser, the Trustee shall not receive any compensation for his services.  If the Trustee is not an Affiliate of the Purchaser, as and for its fee for services provided hereunder, the Trustee shall be entitled to compensation from the Trust Assets as determined by a majority of the Oversight Board.

(b)     Reimbursement of Costs and Expenses of Administering Trust.  In addition to the fee above described in this Section, the Trustee shall be entitled to reimbursement from the Trust Assets of all costs and expenses to administer the Litigation Trust, distribute to the Beneficiaries the Available Cash or other assets available for distribution hereunder, or take other actions contemplated herein.  Costs and expenses reimbursable as administrative expenses of the Trust shall include, without limitation, compensation due to professionals and others engaged or otherwise utilized by the Trustee to enable Trustee to fulfill its duties under this Agreement.

(c)     Other.  Nothing in this Agreement shall preclude the Trustee, if it is a Beneficiary, from receiving any distribution of property to which it is entitled as a Beneficiary pursuant to this Agreement.  Further, nothing in the Purchase Agreement or this Agreement shall

preclude the Trustee from seeking Bankruptcy Court approval (at a hearing held on notice to the Debtors, the Office of the U. S. Trustee) for the modification of the Agreement to provide for additional compensation for services rendered by any Trustee or Successor Trustee as may be appropriate under the circumstances, or for additional reimbursement of costs and expenses of operation and administration, subject to the advice and consent of the Oversight Committee.

3.9     Exculpation; Indemnification.  Each and all of the Trustee, and the Trustee's directors, officers, employees, agents, contractors, representatives and professionals shall be and hereby are exculpated by all Persons from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Trustee by this Agreement or applicable law or otherwise, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts.  The Litigation Trust shall indemnify, defend and hold harmless each and all of the Trustee, and the Trustee's directors, officers, employees, contractors, representatives and professionals from and against any and all claims, causes of action, liabilities, obligations, losses, damages or reasonable expenses (including reasonable attorneys' fees and expenses) (other than and only to the extent due to the Trustee's willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts) to the fullest extent permitted by applicable law.  Any indemnification claim of Trustee (and any other parties entitled to indemnification under this provision) shall be satisfied first from available proceeds of errors and omissions insurance (if any such insurance exists), and then from the Trust Assets, and exclusively from those sources.  The Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

3.10     Termination.  The duties, responsibilities and powers of the Trustee shall terminate on the date the Litigation Trust is dissolved pursuant to Article IX of this Agreement, provided that Sections 3.8 and 3.9 above shall survive such termination and dissolution.

ARTICLE IV
LIQUIDATION TRUST OVERSIGHT COMMITTEE

4.1     Establishment of Litigation Trust Oversight Committee.  The Oversight Committee shall be established and consist of three (3) members, two (2) of which will be appointed by the Purchaser and one (1) of which will be appointed by the Debtors or, in the event the Bankruptcy Case is converted to a case under Chapter 7 of the Bankruptcy Code, the duly appointed and acting representative of the Estates; provided however, that, for so long as any obligation is outstanding to the Pension Benefit Guaranty Corporation (the "PBGC") and Special Value Bond Fund, LLC ("SVBF") which obligation was secured by assets vested in the trust pursuant to this agreement, any appointed representative for the Debtors, including any chapter 7 trustee, shall (i) consult with the PBGC, SVBF and the Official Committee of Unsecured Creditors in the Bankruptcy Case in the selection of the Debtors' member on the Oversight Committee, and (ii) shall not appoint a member to the Oversight Committee if the PBGC or SVBF objects to the appointment of such member in writing.  The Oversight Committee members shall have the authority and responsibility to oversee, review and guide the activities and performance of the Trustee with respect to the Trust Causes of Action.  The Trustee shall consult with and provide information to the Oversight Committee in accordance

with and pursuant to the terms of this Agreement. The members of the Oversight Committee shall initially be _____, _____ and _____.

4.2    Employment of Professionals. The Oversight Committee may utilize the services of Professionals retained by the Trustee as needed. The Oversight Committee has no authority to retain separate Professionals at the expense of the Litigation Trust.

4.3    Meetings of the Oversight Committee. Meetings of the Oversight Committee are to be held with such frequency and at such place as the members of the Oversight Committee may determine in their reasonable discretion.

4.4    Manner of Acting.

(a)    The affirmative vote of a majority of the members of the Oversight Committee shall be the act of the Oversight Committee except as otherwise required by law or as provided in this Agreement. Any or all of the members of the Oversight Committee may participate in a meeting by, or conduct the meeting through the use of, conference telephone or similar communications equipment by means of which all persons participating in the meeting may hear each other, in which case any required notice of such meeting may generally describe the arrangements (rather than or in addition to the place) for the holding thereof. Any member of the Oversight Committee participating in a meeting by this means is deemed to be present in person at the meeting. Voting may, if approved by the majority of the members at a meeting be conducted by electronic mail or individual communications by each member of the Oversight Committee.

(b)    Any member of the Oversight Committee who is present and entitled to vote at a meeting of the Oversight Committee when action is taken is deemed to have assented to the action taken, subject to the requisite vote of the Oversight Committee, unless: (i) such members of the Oversight Committee object at the beginning of the meeting (or promptly upon his/her arrival) to holding it or transacting business at the meeting; or (ii) his/her dissent or abstention from the action taken is entered in the minutes of the meeting; or (iii) he/she delivers written notice (including by electronic or facsimile transmission) of his/her dissent or abstention to the Oversight Committee before its adjournment. The right of dissent or abstention is not available to any member of the Oversight Committee who votes in favor of the action taken.

4.5    Oversight Committee's Action Without a Meeting. Any action required or permitted to be taken by the Oversight Committee at a meeting may be taken without a meeting if the action is taken by unanimous written consent of the Oversight Committee as evidence by one or more written consents describing the action taken, signed by all members of the Oversight Committee and recorded in the minutes or other transcript of proceedings of the Oversight Committee.

4.6    Tenure, Removal and Replacement of the Members of the Oversight Committee. The authority of the members of the Oversight Committee will be effective as of the Closing Date and will remain and continue in full force and effect until the Litigation Trust is terminated in accordance with Section 9.1 hereof. The service of the members of the Oversight Committee will be subject to the following:

(a)   The members of the Oversight Committee will serve until death or resignation pursuant to subsection (b) below, or removal pursuant to subsection (c) below.

(b)   A member of the Oversight Committee may resign at any time by providing a written notice of resignation to the remaining members of the Oversight Committee. Such resignation will be effective upon the date such notice is received by the Oversight Committee or such later date specified in the written notice.

(c)   A member of the Oversight Committee may be removed by the unanimous vote of the other members of the Oversight Committee, written resolution of which shall be delivered to the removed Oversight Committee member; provided, however, that such removal may only be made for Cause.  For purposes of this Section 4.6(c), "Cause" shall be defined as: (i) commission of any act of fraud or dishonesty in connection with his or her appointment to serve on the Oversight Committee; (ii) commission of misconduct that adversely affects, as determined in good faith by the remaining members of the Oversight Committee, the assets held by the Litigation Trust for the benefit of the Beneficiaries; (iii) engaging in conduct constituting a misdemeanor involving moral turpitude or a felony or the indictment of such member for a felony; or (iv) continued failure to perform his or her substantial job functions, after written notice has been delivered by the Oversight Committee to such member, if such failure is not cured within ten (10) days of such notice.  A member of the Oversight Committee may be removed by the Person entitled to appoint such member as set forth in Section 4.1, at any time and for any reason.

(d)   In the event of a vacancy on the Oversight Committee (whether by removal, death or resignation), a new member may be appointed to fill such position by the Person entitled to appoint such member as set forth in Section 4.1.  The appointment of a successor member of the Oversight Committee will be evidenced by the Trustee's filing with the Bankruptcy Court of a notice of appointment, which notice will include the name, address and telephone number of the successor member of the Oversight Committee.

(e)   Immediately upon the appointment of any successor member of the Oversight Committee, all rights, powers, duties, authority and privileges of the predecessor member of the Oversight Committee hereunder will be vested in and undertaken by the successor member of the Oversight Committee without any further act; and the successor member of the Oversight Committee will not be liable personally for any act or omission of the predecessor member of the Oversight Committee.

4.7   Compensation of the Oversight Committee.  The Oversight Committee will not receive any compensation in exchange for their services.

4.8   Exculpation; Indemnification.  Each and all of the Oversight Committee, its members, designees and professionals, and any of their duly designated agents or representatives, shall be and hereby are exculpated by all Persons from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Oversight Committee by this Agreement or applicable law or otherwise, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts.  The Litigation Trust shall indemnify, defend

134835.7                                    12

and hold harmless each and all of the Oversight Committee, its members, designees and professionals, and any of their duly designated agents or representatives, from and against any and all claims, causes of action, liabilities, obligations, losses, damages or reasonable expenses (including reasonable attorneys' fees and expenses) (other than and only to the extent due to the Oversight Committee members' willful misconduct, gross negligence, bad faith, self dealing, breach of fiduciary duty or ultra vires acts) to the fullest extent permitted by applicable law.  Any indemnification claim of the Oversight Committee (and any other parties entitled to indemnification under this provision) shall be satisfied first from available proceeds of errors and omissions insurance (if any such insurance exists), and then from the Trust Assets, and exclusively from those sources.  The Oversight Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

ARTICLE V
BOOKS, RECORDS AND DISTRIBUTIONS

5.1      Books and Records.  The Trustee shall maintain books and records relating to the assets and income of the Litigation Trust and the payment of expenses of, and liabilities of, the Litigation Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with Article VII hereof and to comply with applicable provisions of law.  Any Beneficiary shall have the right to inspect the books and records of the Litigation Trust.  Except as provided in Article VII hereof, nothing in this Agreement requires the Trustee to file any accounting or seek approval of any court with respect to the administration of the Litigation Trust, or as a condition for making any payment or Distribution out of the Trust Assets.

5.2      Distributions.

(a)      General Operating Account; Other Accounts.  The Trustee shall maintain in a general operating account all Cash obtained at any time with respect to the Litigation Trust. The Trustee shall establish and maintain such other accounts as it deems necessary and appropriate to carry forth the terms of the Litigation Trust.

(b)      Distributions on Initial Distribution Date.  As soon as is practicable and prudent after the occurrence of the Initial Distribution Date, subject to the reservation of adequate funds for payment of Advances and the Trustee's fees and other administrative expenses, the Trustee shall deliver Available Cash to Beneficiaries, or if the Bankruptcy Case has been converted to chapter 7, the Distribution to be made to Sellers shall be delivered to the duly appointed chapter 7 trustee for the Estates, in accordance with Section 5.2(d).

(c)      Distributions After the Initial Distribution Date.  After the Initial Distribution Date, the Trustee shall from time to time, in the Trustee's judgment and discretion, subject to the advice and consent of the Oversight Committee, distribute such Available Cash or other assets remaining after satisfaction of all expenses and other obligations of the Litigation Trust to the Beneficiaries in accordance with Section 5.2(d); provided, however, that in no event shall the foregoing impair the right of the Trustee to use funds to satisfy the costs of administering the Litigation Trust.

(d)     Limitation on Distributions.  Upon the Initial Distribution Date and any subsequent Distribution Date, the Trustee shall distribute Available Cash to the holders of Series A Interests and Series B Interests pro rata in accordance with the Distribution Allocation until the holders of Series B Interests have received an aggregate of Thirty Million Dollars ($30,000,000) of Distributions.  Thereafter, all Distributions shall be made one hundred percent (100%) to the holders of Series A Interests.

(e)     Allocation of Offset Rights.  If and to the extent Offset Rights are successfully asserted by the Boeing Parties (the amount of such Offset Rights, the "Offset Amount"), the Trustee shall thereafter distribute Available Cash received on account of any Trust Causes of Action against the Boeing Parties as follows:

(i)     The amount of Available Cash that would have been distributable without giving effect to the Offset Amount shall be determined (such amount, the "Gross Amount").

(ii)     The Distribution Allocation shall be applied to the Gross Amount to determine the portion of the Gross Amount that would have been distributable on account of the Series B Interests (such amount, the "Gross Series B Amount").

(iii)     If the Offset Amount is greater than or equal to the Gross Series B Amount, no Distribution shall be made on account of the Series B Interests and one hundred percent (100%) of the Available Cash shall be distributed on account of the Series A Interests.

(iv)     If the Offset Amount is less than the Gross Series B Amount, the Offset Amount shall be deducted from the Distribution on account of the Series B Interests as calculated in accordance with, and subject to the limitations of, Section 5.2(d).

(f)     Means of Cash Payment.  Cash payments to be made from the Litigation Trust will be in U.S. dollars and may be made, at the sole discretion of the Trustee, by checks drawn on a domestic bank selected by the Trustee, or by wire transfer from a domestic bank. Cash payments to foreign creditors may be made, at the option of the Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

(g)     Time Bar to Cash Payments.  Checks issued by the Litigation Trust in respect of Beneficial Interests shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  After such date, all funds held on account of such voided check may, in the discretion of the Trustee, be reallocated and used in accordance with the provisions of this Agreement.

(h)     Withholding and Reporting Requirements.  In connection with this Agreement and all instruments issued in connection therewith and distributed thereon, the Trustee shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions pursuant to this Agreement shall be subject to any such withholding or reporting requirements.  Any holder of a Beneficial Interest under this Agreement who is required to or wishes to cause the Trustee to withhold federal and/or state withholding taxes therefrom must, no later than fifteen (15) days prior to the Closing

Date, provide to the Trustee any applicable taxpayer identification number for such claimant and all other information reasonably required by the Trustee to effect such withholding.

(i)     <u>Delivery of Distributions and Undeliverable Distributions</u>.  Distributions to Beneficiaries shall be made by the Trustee at the address set forth on <u>Exhibit A</u> or other address made available to the Trustee by or on behalf of a particular Beneficiary.  If any Beneficiary's distribution is returned as undeliverable, no further distributions to such Beneficiary shall be made, unless and until the Trustee is notified of such Beneficiary's then current address, at which time all missed distributions shall be made to such Beneficiary without interest.  Amounts in respect of undeliverable distributions made through the Trustee shall be returned to the Litigation Trust until such distributions are claimed.  All claims for undeliverable distributions must be made within one (1) year after the applicable Distribution Date, after which date the interest of any Beneficiary or successor to such Beneficiary with respect to such property will be discharged and forever barred.  In such cases, any Cash for distribution on account of or in exchange for unclaimed or undeliverable distributions shall become property of the Litigation Trust free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.  Any Interest on which a distribution is unclaimed or undeliverable shall be canceled and of no further force or effect.

(j)     <u>Disputed Payment</u>.  If any dispute arises as to the identity of a Beneficiary who is to receive any Distribution, the Trustee may, in lieu of making such Distribution to such person, make such Distribution into an escrow account until the disposition thereof shall be determined by the Bankruptcy Court or by written agreement among the interested parties to such dispute or otherwise withhold payment until the Bankruptcy Court has determined the identity of the Beneficiary upon request by the Trustee.

ARTICLE VI
SUCCESSOR TRUSTEE

6.1     <u>Resignation</u>.  The Trustee may resign by giving not less than sixty (60) days' prior  written notice thereof to the Oversight Committee and the then Beneficiaries of the Trust; provided, however, that notwithstanding anything to the contrary in this Agreement, no such resignation shall become effective until a permanent or interim successor Trustee shall be appointed as provided in <u>Section 6.3</u> below.

6.2     <u>Removal</u>.  The Trustee may be removed with cause by application of any Beneficiary or other interested party, including, without limitation, the Oversight Committee, to the Bankruptcy Court upon such notice and a hearing as the Bankruptcy Court requires (or in the event that the Bankruptcy Court does not have or refuses to exercise jurisdiction, the Trustee may be removed by application of a Beneficiary or other interested party, including, without limitation, the Oversight Committee, to any other Court of competent jurisdiction, or upon the written agreement of the holders of a majority of the Series A Interests).  "Cause" shall include a showing that the Trustee engaged in willful misconduct, gross negligence or bad faith.  If the Trustee is removed for cause, the successor Trustee shall have the right to seek disgorgement from the Trustee of all or a portion of any fee or commission paid to such removed Trustee.

6.3     Acceptance of Appointment by Successor Trustee.  Any successor Trustee shall be appointed by the Bankruptcy Court, or, if the Bankruptcy Court does not have or refuses to exercise jurisdiction, by any other Court of competent jurisdiction, or by the written agreement of the Oversight Committee.  Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the Litigation Trust records.  Thereupon, such successor Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of its predecessor in the Litigation Trust with like effect as if originally named herein; provided, however, that a removed or resigning Trustee shall, nevertheless, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Litigation Trust all the estates, properties, rights, powers and trusts of such predecessor Trustee.  No Trustee shall have any liability or responsibility for the acts or omissions of any predecessor or successor Trustee.

ARTICLE VII
REPORTING; FEDERAL INCOME TAX MATTERS

7.1     Reports.

(a)     In addition to any reporting otherwise required by this Agreement, as soon as practicable upon termination of the Litigation Trust, the Trustee shall prepare a written report, including: (i) financial statements of the Litigation Trust for the period commencing on the date hereof and ending on the Termination Date and the receipts and disbursements of the Trustee for such period; and (ii) a description of any action taken by the Trustee in the performance of its duties which materially affects the Litigation Trust.  All such reports shall be available for inspection by any Beneficiary.

(b)     Upon the occurrence of any change, circumstance or effect that could reasonably be determined to be materially adverse to the Litigation Trust, the Trustee may determine that such a change, circumstance or effect has occurred and may conduct itself in such a way as to comply with its fiduciary obligations to the Beneficiaries, and the Trustee shall not be liable for any determination made by it in good faith.

7.2     United States Federal Income Tax Matters.

(a)     Federal Income Tax Treatment of Litigation Trust; Trust Assets Treated as Owned by Beneficiaries of Litigation Trust.  For all federal income tax purposes, all parties (including without limitation the Debtors, the Trustee and the Beneficiaries under the Litigation Trust) shall treat the transfer of the Trust Assets to the Litigation Trust as (A) a transfer of the Trust Assets to the Beneficiaries entitled to distributions under this Agreement followed by (B) the transfer by such Beneficiaries to the Litigation Trust of the Trust Assets.  Accordingly, the Beneficiaries shall be treated for federal income tax purposes as the grantors and the owners of their respective interests in the Trust Assets.

(b)     Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Trustee of a private letter ruling if the Trustee so requests one, or

the receipt of an adverse determination by the IRS upon audit if not contested by the Trustee), the Trustee shall make timely filings of annual tax returns reflecting the items of income, gain or loss, deductions or credits of the Litigation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a). The Trustee shall also annually send to each record holder of a Beneficial Interest a separate statement setting forth the holder's share of the items of income, gain, loss, deduction or credit and will instruct all such holders to report such items on their income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their income tax returns. The Litigation Trust's taxable income, gain, loss, deduction or credit will be allocated to the Beneficiaries in accordance with their relative beneficial interests in the Litigation Trust. The Trustee shall value the Trust Assets on a consistent basis and such valuations shall be used for all federal income tax purposes by the Trustee and the Beneficiaries. Consistent with its status as a grantor trust, the Litigation Trust shall not be, and the Beneficiaries shall be, responsible for the payment of their allocable portion of any federal income tax liability related to the operation of the Litigation Trust.

(c)     Payment of Certain Taxes. The Trustee shall be responsible for payments, out of the Trust Assets, of any taxes imposed on the Litigation Trust or the Trust Assets.

(d)     Compliance. The Litigation Trust shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority with respect to Distributions.

7.3     Other. The Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Litigation Trust that, upon the advice of counsel and/or other professionals, are identified to the Trustee as required by any governmental authority.

ARTICLE VIII
BENEFICIARIES' INTERESTS

8.1     Beneficial Interests. The interests of the Beneficiaries in the Litigation Trust shall be uncertificated and shall be reflected only on the records of the Litigation Trust maintained by the Trustee. The Trustee shall be fully protected and incur no liability to any Beneficiary or any other Person in making any Distribution in accordance with this Agreement.

8.2     Transfer. The interests of the Beneficiaries in the Litigation Trust are not negotiable and shall be transferable after written notice to the Trustee only: (a) pursuant to applicable laws of descent and distribution (in the case of a deceased individual Beneficiary), or (b) by operation of law. The Trustee shall not be required to record any transfer in favor of any transferee who, in the sole discretion of the Trustee, is or might be construed to be ambiguous, or create uncertainty as to the holder of the interest in the Litigation Trust, and in so doing the Trustee shall be fully protected and incur no liability to any Person pursuant to Section 3.6 hereof. Until a transfer is in fact recorded on the books and records maintained by the Trustee for the purpose of identifying the Beneficiaries, the Trustee, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make Distributions and send communications to the Beneficiaries, as though it has no notice of any such transfer, and in so doing the Trustee shall be fully protected and incur no liability to any purported transferee or any other Person pursuant to Section 3.6 hereof.

## ARTICLE IX
## TERMINATION OF LIQUIDATION TRUST

9.1     Termination of Litigation Trust.  The Litigation Trust shall be dissolved and terminated when each of the following conditions are satisfied (such date being referred to herein as the "Termination Date"):

(a)     all of the Trust Causes of Action have been resolved or otherwise liquidated, settled or reduced to cash as determined by a majority of the Oversight Committee;

(b)     all other Trust Assets have been liquidated;

(c)     all Cash or other distributable assets from the liquidation of the Trust Assets has been distributed in accordance with this Agreement; and

(d)     all duties and obligations of the Trustee under this Agreement have been fulfilled.

Notwithstanding the foregoing provisions of this Section 9.1, in no event shall the Litigation Trust be terminated later than five (5) years from the Effective Date (the "Initial Litigation Trust Term"), unless the term of such Trust is extended pursuant to Section 9.2 of this Agreement.

The Trustee shall be discharged at such time as the Litigation Trust is terminated.

9.2     Extension of Term of Litigation Trust.  Any extension of the term of the Litigation Trust set forth in Section 9.1 hereof must be (i) for a finite period of time, (ii) preceded by the Trustee's receipt of a favorable ruling from the IRS that the Litigation Trust's continued existence beyond such period would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of § 301.7701-4(d) of the Treasury Regulations for U.S. federal income tax purposes, and (iii) only to the extent required by law, approved by the Bankruptcy Court within two months of the beginning of the extended term.

## ARTICLE X
## AMENDMENT AND WAIVER

Subject to approval of the Bankruptcy Court (or in the event that the Bankruptcy Court does not have or refuses to exercise jurisdiction, subject to the approval of any other Court of competent jurisdiction, or alternatively upon the written agreement of the holders of a majority of the Series A Interests), any provision of this Agreement may be amended or waived with the approval of the Trustee, provided further that no change shall be made to this Agreement that would (i) adversely affect the Distributions otherwise required to be made to any Beneficiary, (ii) adversely affect the U.S. federal income tax status of the Litigation Trust as a "grantor trust" (in accordance with Section 7.2 hereof), if applicable, (iii) unless agreed to in writing by the affected Trustee, adversely affect the rights of the Trustee or (iv) unless agreed to in writing by all of the Beneficiaries, amend any provision of Article IV.  Technical amendments to this Agreement may be made as necessary to cure any ambiguity, defect or inconsistency in this Agreement or enable the Litigation Trust to effectuate the terms of this Agreement, with the

consent of the Trustee provided that such amendment does not adversely affect the rights of the Beneficiaries.

ARTICLE XI
MISCELLANEOUS PROVISIONS

11.1    Cooperation.  Simultaneously with or immediately prior to the effectiveness of this Agreement, the Debtors and the Purchaser shall provide the Trustee with copies of such of their books and records and such further information as the Trustee has requested for the purpose of performing its duties and exercising its powers hereunder.  The Debtors and the Purchaser each agree that the Trustee, through his employees, consultants and representatives (including, without limitation, his legal advisors and accountants) shall be given reasonable access to and, at the Litigation Trust's expense, copies of all books and records that the Trustee deems necessary or appropriate related to the Trust Causes of Action, and the Debtors and the Purchaser shall maintain such books and records until the Termination Date.

11.2    Laws as to Construction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to choice of law rules which would require the application of the law of another jurisdiction.

11.3    Transactions on Business Days.  If the Closing Date or any other date on which a transaction may occur under the Purchase Agreement or this Agreement shall occur on a day that is not a Business Day, the transactions contemplated by the Purchase Agreement or this Agreement to occur on such day shall instead occur on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.  Without limiting the foregoing, if any payment or act is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

11.4    Severability.  If any provision of this Agreement or application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

11.5    Notices.  All notices and other communications provided for or permitted hereunder shall be made in writing by hand-delivery, certified or registered first-class mail, next day air courier or telecopier to the following addresses:

If to the Trustee:

_____
_____
_____
_____
_____
Telephone:   _____
Fax:         _____

If to the Oversight Committee:

At the addresses for the members thereof on file with the Trustee

All such notices and communications shall be deemed to have been duly given: when delivered by hand, if personally delivered; three (3) Business Days after being deposited in the mail, postage prepaid, if mailed; one (1) Business Day after being timely delivered to a next-day air courier; and when receipt is acknowledged by the addressee, if telecopied.

11.6    Headings.  The Section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or any term or provision hereof.

11.7    Conflict with Purchase Agreement or Sale Order.  In the event of a conflict between the terms of this Agreement, the terms of the Purchase Agreement and the terms of the Sale Order, the terms of the Sale Order shall control over the terms of the Purchase Agreement and this Agreement, and the terms of the Purchase Agreement shall control over the terms of this Agreement, except that the terms of this Agreement shall control in identifying the "Beneficiaries" of the Trust and the process for the removal, resignation and appointment of the Trustee and any successor Trustee.

11.8    Retention of Jurisdiction.  After the Closing Date and to the fullest extent permitted by law, to the extent the Bankruptcy Court elects to exercise jurisdiction, the Bankruptcy Court shall retain exclusive jurisdiction over (a) the Litigation Trust, including the performance of the duties of the Trustee and in overseeing the Litigation Trust and (b) the interpretation of this Agreement and all issues arising under or related to this Agreement.

11.9    Closing of Cases.  Nothing in this Agreement shall preclude the closing of the Bankruptcy Case at such time as the representatives of the Estate may determine same to be appropriate and the closing of the Bankruptcy Case shall not impair the validity or enforceability of this Agreement or the Litigation Trust herein described.

11.10   Third Party Beneficiaries.  Except for the Beneficiaries, nothing in this Agreement is intended to confer upon any Person that is not a party hereto any rights or remedies hereunder.

11.11   Successors and Assigns.  The terms of this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

134835.7                          20

    11.12 <u>Counterparts</u>.  This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[<em>Remainder of page intentionally left blank</em>]

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as the date of the first above written.

TRUSTEE:

[_____]

By: _____
     Name: _____
     Title: _____

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

DEBTORS:

ALABAMA AIRCRAFT INDUSTRIES, INC.

By: _____
     Name: _____
     Title: _____


ALABAMA AIRCRAFT INDUSTRIES, INC.
–BIRMINGHAM

By: _____
     Name: _____
     Title: _____


PEMCO AIRCRAFT ENGINEERING
SERVICES, INC.

By: _____
     Name: _____
     Title: _____

[SIGNATURE PAGE TO LITIGATION TRUST AGREEMENT]

PURCHASER:

KAISER AIRCRAFT INDUSTRIES, INC.

By: _____
      Name: _____
      Title: _____

Exhibit A

<u>Beneficial Interests</u>

| <u>Beneficiary Name and Address</u> | <u>Interest</u> |
|---|---|
| PURCHASER<br>Kaiser Aircraft Industries, Inc.<br>9300 Lee Highway<br>Fairfax, Virginia  22031<br>Attn:  Nicholas Burakow | 100% of the Series A Interests |
| DEBTORS' ESTATES<br>c/o Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia  30309<br>Attn:   Grant T. Stein<br>        Dennis J. Connolly<br>        William S. Sugden<br>        Sage M. Sigler | 100% of the Series B Interests |

**EXHIBIT C**

**FINAL CURE AMOUNTS**

| Contract Counterparty | Address | Contract | Cure Amount | Notes |
|---|---|---|---|---|
| ARINC | Attn: Debbie Leipra 2551 Riva Rd Annapolis, MD 21401 301-266-4000 (phone) DLEIPPA@ARINC.com 478-328-2375 (fax) | F2AST Teaming Agreement-related to Prime Contract # FA8530-08-D-0001 | None | Notice provided. *See* Docket No. 454. |
| ARINC Engineering Services, LLC | Attn: Brian Carlow, Sr. Mgr., Contracts 2551 Riva Road Annapolis, Maryland 21401 Fax:405-601-6006 | R23G Teaming Agreement for SOL W15 P7t-08-R-E001 | None | Notice provided. *See* Docket No. 461. |
| Bright House Networks | 151 London Pkwy Birmingham, Alabama 35211 | Service and Usage Agreement | $642.45 | Notice provided. *See* Docket No. 454. |
| City of Birmingham | Attn: Tom-Barnett, Director of Finance City Hall- 1st Floor 710 North 20th Street Birmingham, AL 35203  -and-  Attn: Tom-Barnett, Director of Finance PO Box 11348 Birmingham, Alabama 35296 | Mutual Aid Agreement for Fire Fighting Services | None | Notice provided. *See* Docket No. 454. |
| British Aerospace | MTC Technologies 200 Park Place Drive | F2AST Teaming Agreement related to Prime Contract | None | Notice provided. *See* Docket No. 454. |

| | Warner Robins, Georgia 31088 | #FA8530-08-D-0010 | | |
|---|---|---|---|---|
| Concepts in Production | Attn: Tom Higgins<br>203 3rd Ave S, Suite 4<br>Amory, Mississippi 38821 | Software Support Agreement | $45.16 | Notice provided.<br>*See* Docket No. 454. |
| Critical Components, Inc. | 120 Interstate N Pkwy<br>Bldg. 300, Suite 305<br>Atlanta, Georgia 30339<br>Fax: 678-868-2211 | Equipment Service Agreement | $1,735.18 | Notice provided.<br>*See* Docket No. 454. |
| Datamax Software Group, Inc. | Attn: Legal Department<br>5090 Robert J Mathew Pkwy., # 100<br>El Dorado Hills, California 95762<br><br>-and-<br><br>Attn: Legal Department<br>8911 N. Capital of Texas Hwy., #3220<br>Austin, Texas 78759 | Software Support Agreement | None | Notice provided.<br>*See* Docket No. 454. |
| Defense Support Services, LLC | Attn: Donald W.Smith<br>901 Lincoln Drive W., Suite 200<br>Marlton, New Jersey 08053 | Manufacture of Multiple UH-60 Helicopter Parts-Contract # FA108-09-D-0003 | None | Notice provided.<br>*See* Docket No. 454. |
| Defense Supply Center-Richmond | 8000 Jefferson Davis Highway<br>Richmond, Virginia 23297<br>E-Mail:Stefan.hill.ctr@diu.mil<br>Fax: 804-279-1758<br><br>-and- | C-130 parts Contract # SPM4A7-08-5590 | TBD | *See* Sale Order, ¶¶ 20, 25. |

| | | | |
|---|---|---|---|
| Victor W. Zhao<br>United States Department of Justice<br>1100 L Street, NW, Room 10044<br>Washington, DC 20005<br>Victor.w.zhao@usdoj.gov | | | Notice provided. *See* Docket No. 454. |
| Deltacom | PO Box 2252<br>Delta ID 1058<br>Birmingham, Alabama 35246-1058<br><br>-and-<br><br>Attn: Legal Department<br>7037 Old Madison Pike<br>Huntsville, Alabama 35806 | Service and Usage Agreement | None | Notice provided. *See* Docket No. 454. |
| DLA Aviation | DFAS-ADPS/CA-BSM<br>PO Box 182204<br>Columbus, Ohio 43218-2204<br>Fax: 269-961-5374<br><br>-and-<br><br>20002 N.19th Ave.<br>Mail Code A<br>Phoenix, Arizona 85027 | Fabricate Wire Rope Assemblies Contract # SPM4A7-10-D-5541 (Basic Award Executed as SPM4A710D5441) | None | Notice provided. *See* Docket No. 454. |
| DRS Technical Services | 12930 Worldgate Drive<br>Suite 700<br>Herndon, Virginia 20170 | F2AST Teaming Agreement related to Prime Contract #FA8530-08-D-0001 | None | Notice provided. *See* Docket No. 454. |

3

| | | | |
|---|---|---|---|
| EMC Corporation | Attn: Lisa Branco<br>55 Constitution Blvd<br>Franklin, Massachusetts 02038 | Hardware & Software<br>Support Agreement | None | Notice provided. *See*<br>Docket No. 454. |
| General Dynamics<br>Information<br>Technology, Inc. | 5100 Springfield Pike<br>Suite 509<br>Dayton, Ohio 45431<br><br>-and-<br><br>Attn: Legal Department<br>3211 Jermantown Road<br>Fairfax, Virginia 22040 | F2AST Teaming Agreement<br>related to Prime Contract #<br>FA8530-08-D-0006 | None | Notice provided. *See*<br>Docket No. 454. |
| Hewlett Packard | 301 S Rockrimmon Blvd<br>C/O D. Bledsoe<br>CX015A<br>Colorado Springs, Colorado 80919<br>Fax: 877-819-3581 | Hardware & Software<br>Support Agreement | $3,461.55 | Notice provided. *See*<br>Docket No. 454. |
| ILSC | 700 West Airport Road<br>Payson, Arizona 85541 | SbAST Teaming Agreement | None | Notice provided. *See*<br>Docket No. 454. |
| L-3<br>Communications | 7500 Maehr Road<br>M S 1121<br>Waco, Texas 76705 | F2AST Teaming Agreement<br>related to Prime Contract #<br>FA8530-08-D-0007 | None | Notice provided. *See*<br>Docket No. 454. |
| L-3<br>Communications | Attn: Donald Hunt<br>PO Box 6177<br>Greenville, Texas 75403-6177 | Basic Ordering Agreement<br>23600/5L-084 for P-3 PDM | None | Notice provided. *See*<br>Docket No. 454. |

4

| | | | | |
|---|---|---|---|---|
| L-3 Communications IS | Attn: Donald Hunt PO Box 6177 Greenville, Texas 75403-6177 | P-3 SMIP Teaming Agreement (L-3 Teaming Agreement) | None | Notice provided. *See* Docket No. 454. |
| Lockheed Martin Integrated Systems | GrayRobinson, P.A. Attn: Steven J. Solomon 1221 Brickell Avenue Suite 1600 Miami, Florida 33131<br><br>-and-<br><br>Nick Cisterino Manager, Subcontracts Lockheed Martin Corporation ID/IQ Solutions, Global Training and Logistics 10,000 Sagemore Drive Suite 10203 Marlton, New Jersey 08053 | The Teaming Agreement relating to the DESPIII program opportunity, Government RFP FA8224-09-R-DESPIII, dated on or about April 6, 2010<br><br>Subcontract Agreement # AAI08D0008 between Lockheed Martin Integrated Systems, Inc. and Alabama Aircraft Industries, Inc.<br><br>P.O. # 7200005350 dated 6/29/2009, as amended by change orders, with all attachments, in support of contract FA8530-08-D-0008, Delivery Order 0004, entitled "Romanian Avionics Upgrade Modification", including, without limitation, any and all warranty obligations imposed by Section 4.4.4 of the Performance-Based Work Statement which is | None | Negotiated with Lockheed regarding contracts to be assumed. *See* Sale Order, ¶ 23. |

5

| | | | |
|---|---|---|---|
| | Attachment 8, or otherwise.<br><br>P.O. # 720008142 dated 12/10/2010, as amended by change orders, in support of contract FA8530-08-D-0008, Delivery Order 0016, entitled "Removal and Replacement of Rainbow and Corner Fittings IRAQ AIR FORCE C-130E" | | |
| McAfee, Inc. | ANI Direct<br>Attn: Jan Clappy<br>4006 Beltline Rd., Suite 275<br>Addison, Texas 75001<br>Fax: 972-385-9771 | Hardware & Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| MHC Companies | Attn: Teresa Meyer<br>10900 Portland Ave S<br>PO 1749<br>Burnsville, Minnesota 55337 | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| Modspace | Attn: Clay Johnson<br>3701 65TH Street N<br>Birmingham, Alabama 35206 | Capital Leases | $3,063.97 | Notice provided. *See* Docket No. 454. |
| Naval Air Warfare Center AD | Attn: Francis Jurmin<br>21936 Bundy Road<br>Patuxent Rd, Maryland 20670<br>Jurmin.francis@navy.mil | Fabricate to Print (ATCC Consoles) Contract Number N00421-08-D-0024 | None | Notice provided. *See* Docket No. 454. |

6

| Party | Address | Amount | Contract | Notice |
|---|---|---|---|---|
| Neopost Leasing | Mail Finance<br>478 Wheelers Farms Rd<br>Millford, Connecticut 06461 | Hardware Lease & Support Agreement | $625.09 | Notice provided. *See* Docket No. 454. |
| Nextel Communications | Nextel/Sprint Communications<br>PO Box 4181<br>Harold Stream, Illinois 60197-4188 | Service & Usage Agreement | $4,911.03 | Notice provided. *See* Docket No. 454. |
| Northrup Grumman | 8710 Freeport Pkwy, Suite 200<br>Irving, TX 75063-2577<br><br>-and-<br><br>Alan Currie<br>alan.currie@ngc.com<br>Northrop-ISS<br>101 Warner Robbins, GA | F2AST Teaming Agreement related to Prime Contract #FA8530-08-D-0011 | None | Notice provided. *See* Docket No. 454. |
| OO-ALC/PKEA | Attn: Annette Moody<br>6039 Aspen Ave<br>B1289 Upstairs<br>Hill AFB, Utah 84056-5808<br>Annette.moody@hill.af.mil | Strip C-130 Aircraft Contract Number FA8224-11-D-0006 | None | Notice provided. *See* Docket No. 454. |
| Oracle Corporation | Attn: Nirup Natraj<br>PO Box 371992<br>Pittsburgh, Pennsylvania 15250-7992<br>Nirup.natraj@oracle.com | Services Contract number 4433690 and the Oracle License and Services Agreement dated February 27, 2006 between Oracle | $55,254.77 (of which $8,010 represents a cure payment, and the balance | Negotiated cure amount. *See* Sale Order, ¶ 22. |

7

|  |  |  |  |
|---|---|---|---|
|  | -and-<br><br>Buchalter Nemer, PC<br>Attn: Shawn Christianson<br>333 Market Street, 25th Floor<br>San Francisco, California 94105-2126 | USA, Inc. and Pemco Aviation Group, Inc., together with any amendments thereto (the "Oracle Agreements") | of which is prepayment for services to be rendered subsequent to the Closing, less any amounts paid by Debtors and received by Oracle prior to Closing. |  |
| Pinnacle Leasing | Baker, Donelson, Bearman, Caldwell, & Berkowitz, P.C.<br>Attn: Michael D. Tucker<br>Wells Fargo Tower<br>420 20th Street North<br>Suite 1600<br>Birmingham, Alabama 35203<br><br>-and-<br><br>Attn: Charlotte W. Kearney, President<br>P.O. Box 661194<br>Birmingham, Alabama 35226 | Capital Lease | $1,425.95 | Negotiated cure amount. |
| Quest Software | P.O. Box 51739<br>Los Angeles, CA 90051-6039<br>5 Polaris Way<br>Aliso Viajo, California 92656 | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |

8

| | | | |
|---|---|---|---|
| R-4 Integration | 634 Anchors Street<br>Suite 202<br>Ft. Walton Beach, Florida 32548 | SbAST Teaming Agreement | None | Notice provided. *See* Docket No. 454. |
| Raytheon | Attn: Legal Department<br>870 Winter Street<br>Waltham, Massachusetts 02451<br><br>-and-<br><br>12160 Sunrise Valley Drive<br>Reston, Virginia 20191 | F2AST Teaming Agreement related to Prime Contract #FA8530-08-D-0012 | None | Notice provided. *See* Docket No. 454. |
| SAIC | Attn: Rick Stravinsky<br>16701 West Bernardo Drive<br>San Diego, California 30384<br><br>-and-<br><br>1000 Park Drive<br>Warner Robins, Georgia 31088 | F2AST Teaming Agreement related to Prime Contract #FA8530-08-D-0013 | None | Notice provided. *See* Docket No. 454. |
| Sage Software, Inc. | 56 Technology Dr<br>Irvine, California 92618 | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| Scientific Research Corporation | 2300 Windy Ridge Parkway<br>Suite 400 South<br>Atlanta, GA  30339 | F2AST Teaming Agreement related to Prime Contract #FA8530-08-D-0014 | None | Notice provided. *See* Docket No. 454. |

| | | | | |
|---|---|---|---|---|
| Scriptlogic | 6000 NW Broken Sound Pkwy 2nd Floor Boca Raton, Florida 33487 | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| Symantec Corporation | Attn: Legal Department 350 Ellis Street Mountain View, California 94043 | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| The Birmingham Airport Authority | Attn: Patty Howell 5900 Messer-Airport Highway Birmingham, Alabama 35212<br><br>-and-<br><br>Burr & Forman Derek F. Meek 420 North 20th Street Suite 3400 Birmingham, Alabama 35203 | Facility Lease | $63, 371 | Negotiated cure amount and adequate assurance. *See* Sale Order, ¶ 18. |
| U.S. Army | Attn: Elizabeth Jackson Build 401 Lee Blvd Fort Eustis, Virginia 23604-5577 elizabeth.a.jackson@usarmy.mil<br><br>-and-<br><br>Victor W. Zhao United States Department of Justice | UH-60 Helicopter Contract #W911W6-11-P-0030 | TBD | *See* Sale Order, ¶¶ 20, 25. |

10

| | 1100 L Street, NW, Room 10044 Washington, DC 20005 Victor.w.zhao@usdoj.gov | | | |
|---|---|---|---|---|
| United States Air Force | Attn: Bobbi Whitlock Build 3001 Suite 2AH81A Tinker AFB, Oklahoma 73145-3015 Bobbi.whitlock@tinker.af.mil<br><br>Victor W. Zhao United States Department of Justice 1100 L Street, NW, Room 10044 Washington, DC 20005 Victor.w.zhao@usdoj.gov | Re-manufacture KC-135 Flap Drive Gearbox Contract # FA 8118-10-D-0043 | TBD | *See* Sale Order, ¶¶ 20, 25. |
| United States Air Force | Attn: Robin Dixon 215 Page Rd Suite 131 Robbins AFB, Georgia 31098-1662 Robin.dixon@robins.af.mil<br><br>-and-<br><br>Victor W. Zhao United States Department of Justice 1100 L Street, NW, Room 10044 Washington, DC 20005 Victor.w.zhao@usdoj.gov | Multi-Effort Acquisition Tool Contract Number: FA8530-11-D-0002 | TBD | *See* Sale Order, ¶¶ 20, 25. |
| Vertex, Inc. | Attn: Legal Department 1041 Old Cassatt Road | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |

11

| | Berwyn, Pennsylvania 19312 | | | |
|---|---|---|---|---|
| VMWare, Inc. | Attn: Legal Department<br>3401 Hillview Ave<br>Palo Alto, California 94304 USA | Software Support Agreement | None | Notice provided. *See* Docket No. 454. |
| WAS Aviation Services, Inc. | WAS Aviation Services, Inc.<br>c/o Sun Capital Partners, Inc.<br>5200 Town Center Circle<br>Suite 470<br>Boca Raton, FL 33486<br>Attn: Gary Talarico & Deryl Couch<br><br>-and-<br><br>Morgan, Lewis & Bockius LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Steven A. Navarro, Esq. | FWAS Sale Agreement, including transition services agreement | None | Notice provided. *See* Docket No. 454. |

12