IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Civil Action No. 1:11-cv-01003 (JEI)

Bankruptcy Court Case No. 11-10452–PJW (Jointly Administered)

In re ALABAMA AIRCRAFT INDUSTRIES, INC., *et al., Debtors.*

THE BOEING COMPANY, *Appellant,*

v.

ALABAMA AIRCRAFT INDUSTRIES, INC. and
KAISER AIRCRAFT INDUSTRIES INC., *Appellees.*

## BRIEF IN SUPPORT OF KAISER AIRCRAFT INDUSTRIES, INC.'S MOTION TO DISMISS APPEAL AS MOOT [11 U.S.C. § 363(m)]

Bruce Grohsgal (DE Bar No. 3583)
PACHULSKI, STANG, ZIEHL
  & JONES LLP
919 North Market Street, 17th Floor
Wilmington, DE  19801
Tel:    (302) 778-6403
Fax:    (302) 652-4400
Email: bgrohsgal@pszjlaw.com

-and-

Thomas E. Patterson (*pro hac vice* pending)
David M. Guess (*pro hac vice* pending)
KLEE, TUCHIN, BOGDANOFF
  & STERN LLP
1999 Avenue of the Stars, Suite 3900
Los Angeles, CA 90067
Tel:    (310) 407-4000
Fax:    (310) 407-9090
Email: tpatterson@ktbslaw.com
        dguess@ktbslaw.com

*Attorneys for Kaiser Aircraft Industries, Inc.*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...........................................................................1

II.   FACTS ...........................................................................................................4

      A.    General Background. ...........................................................................4

      B.    The Marketing of the Debtors' Assets for Sale. ..................................5

      C.    The Asset Purchase Agreement. ..........................................................6

      D.    The Bankruptcy Court Proceedings. ...................................................8

      E.    The Sale Order and the Appeal. .........................................................11

      F.    Consummation of the Transaction. ....................................................13

III.  ARGUMENT ................................................................................................14

IV.   CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*,
  600 F.3d 231 (2d Cir. 2010)..................................................................................................19

*In re Stadium Mgmt. Corp.*,
  895 F.2d 845 (1st Cir. 1990).............................................................................................18, 19

*Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*,
  124 F.3d 487 (3d Cir. 1997)........................................................................................10, 11, 14

*Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*,
  141 F.3d 490 (3d Cir. 1998)............................................................................................15, 16

*L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*,
  209 F.3d 291 (3d Cir. 2000)............................................................................................14, 15

*Official Comm. of Unsecured Creditors v Trism, Inc. (In re Trism, Inc.)*,
  328 F.3d 1003 (8th Cir. 2002) ............................................................................................18

*Official Committee of Unsecured Creditors of Cybergenics Corp. v Chinery*,
  330 F.3d 548 (3d Cir. 2003)........................................................................................11, 14, 20

*Pittsburgh Food & Bev. v. Ranallo*,
  112 F.3d 645 (3d Cir. 1997)........................................................................................15, 16, 20

**STATUTES**

11 U.S.C. § 363(b) ................................................................................................................5, 20

11 U.S.C. § 363(m) ............................................................................................................ *passim*

11 U.S.C. § 365(d)(4)(B) ..........................................................................................................8

11 U.S.C. § 1113 ......................................................................................................................5

29 U.S.C. § 1362......................................................................................................................5

# I.

## PRELIMINARY STATEMENT

Kaiser Aircraft Industries, Inc. ("Kaiser"), as purchaser, moves to dismiss as moot the appeal (the "Appeal") filed by The Boeing Company ("Boeing") from the order[1] authorizing the sale to Kaiser of (i) certain operating assets of Alabama Aircraft Industries, Inc. and its affiliated debtors (collectively, the "Debtors"), and (ii) a portion of the beneficial interests in a trust (the "Litigation Trust") created to hold certain litigation claims held by the Debtors' bankruptcy estates.[2]

Following denial of Boeing's oral request for a stay of the Sale Order in the bankruptcy court on September 1, 2011,[3] a request Boeing did not pursue in this Court, the transactions authorized by the Sale Order were consummated on September 8, 2011.[4]

The proper course in these circumstances is to dismiss the Appeal as moot pursuant to 11 U.S.C. § 363(m).  Boeing seeks to reverse or to modify the Sale Order so as to deprive Kaiser

---

[1]   *Order Granting Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts, Free and Clear of All Liens, Claims, and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* (the "Sale Order").

All pleadings cited herein as part of the record below are attached to the accompanying Affidavit of Thomas E. Patterson.  In addition, all of the documents filed in the Debtors' bankruptcy cases are available at http://www.americanlegalclaims.com/aaii/docslist.php?code=CD.

[2]   Sale Order, ¶ 2; Asset Purchase Agreement ("APA") §§ 2.1, 2.2.  The APA is attached as Exhibit A to the Sale Order.

[3]   September 1, 2011 Transcript ("Transcript"), at 118:19-119:17.

[4]   Affidavit of Nicholas Burakow ("Burakow Aff."), ¶ 3.

and the Debtors' estates of the benefits of the Sale Order.[5]  But Kaiser, which the bankruptcy court found acted in good faith in connection with its acquisition of the operating assets and Litigation Trust interests,[6] has acted in reliance on the Sale Order and the transactions authorized by that Order have been consummated.[7]  Among other things, (i) Kaiser has paid the purchase price to the Debtors, (ii) executory contracts and unexpired leases have been assumed and assigned to Kaiser, and Kaiser has made nearly $100,000 in required payments to cure all defaults under those contracts and leases, (iii) Kaiser's parent company has issued a $100,000 guarantee in favor of the lessor of the Debtors' operating facility and has capitalized Kaiser with $7,000,000, (iv) Kaiser has commenced operations and established relationships with customers and vendors, and is actively seeking new business opportunities, (v) causes of action have been vested in the Litigation Trust, (vi) the parties have appointed the Trustee and the Trust Oversight Committee of the Litigation Trust, (vii) Kaiser has capitalized the Litigation Trust with an initial $500,000, and (viii) the Litigation Trust has commenced a lawsuit against Boeing in Alabama state court that asserts ten separate causes of action and seeks damages in excess of $100 million.[8]

Given these circumstances, the Sale Order is plainly moot under 11 U.S.C. § 363(m). Boeing's requested modifications of the Sale Order – to invalidate the vesting of causes of action against it in the Litigation Trust or, alternatively, to create a new defense to its liability to the Litigation Trust based on the fact that the causes of action against it were vested in the Litigation

---

[5]   *Statement of Issues To Be Presented and Designation of Items To Be Included in the Record* [Dkt. No. 2] ("Statement of Issues"), at 1-2.

[6]   Sale Order, ¶¶ L, 8; Transcript, at 113:5-9.

[7]   Burakow Aff., ¶¶ 3-4.

[8]   *Id.*; Notice of Filing Complaint, at 1, Exh. "A".

Trust[9] – risk depriving the Litigation Trust and its beneficiaries, Kaiser and the Debtors' bankruptcy estates, of the benefits of their bargain under the sale, benefits they were each promised if they performed under their agreements and the Sale Order.[10]  Moreover, Kaiser specifically relied on the vesting of causes of action in the Litigation Trust in funding the Litigation Trust with an initial $500,000, as did the Litigation Trust in commencing an action against Boeing based upon that vesting.[11]

Boeing, on the other hand, suffers no cognizable prejudice if this Appeal is dismissed. The vesting of causes of action in the Litigation Trust fully preserved all of Boeing's pre-bankruptcy defenses to the Debtors' causes of action against it.[12]  In objecting to the sale and bringing this Appeal, Boeing seeks to keep the causes of action against it in the hands of the Debtors, who lack the financial resources to vigorously prosecute those causes of action.[13]  But the prospect that Boeing's litigation opponent will be a well-funded litigation trust and not cash-strapped debtors is not a harm to Boeing that the law recognizes.  Alternatively, Boeing seeks to create an additional defense to the causes of action against it based on the fact that those causes of action were vested in the Litigation Trust.[14]  But Boeing is in essentially the same position it was in pre-bankruptcy; it has the same potential liability it had before the bankruptcy with the

---

[9]   Statement of Issues, at 1-2.

[10]   Sale Order, ¶ 2; APA§§ 2.1, 2.2.

[11]   Burakow Aff., ¶ 4; Notice of Filing Complaint, at 1, Exh. "A".

[12]   Sale Order, ¶¶ 4, 5.

[13]   Statement of Issues, at 1-2; Transcript, at 40:21-41:9, 80:18-81:6, 83:22-84:5, 91:6-92:20; *Debtors' Motion for Order (I) Converting Cases to Chapter 7 and (II) Setting Bar Date for Filing Final Chapter 11 Fee Applications and Establishing a Hearing Date Thereon*, at 1-6.

[14]   Statement of Issues, at 1-2.

same potential defenses available to it.[15] Accordingly, in appealing the Sale Order, Boeing seeks a windfall to which it is not entitled – a new defense to its liability by virtue of the Debtors having filed for bankruptcy and having vested their causes of action in a litigation trust.[16]

## II.

## FACTS

### A.     General Background.

Until the sale of their business to Kaiser, the Debtors operated for nearly sixty years as an aerospace and defense company, providing aircraft maintenance and modification services to the U.S. Government.[17] The Debtors specialized in providing programmed depot maintenance on large transport, tanker and patrol aircraft, such as the C-130 "Hercules" transport aircraft, the KC-135 refueling aircraft and the P-3 patrol aircraft.[18] In addition, the Debtors provided various other repair, maintenance and modification services, including helicopter maintenance, aircraft stripping and painting, rewiring, parts fabrication and engineering support.[19]

In the years prior to the filing of the Debtors' bankruptcy cases, the Debtors became increasingly unable to replace maturing contracts, which caused a substantial drop in the Debtors' revenues.[20] The fall in revenues, in turn, left the Debtors in a position where they were unable to satisfy their obligations under a collective bargaining agreement to maintain a pension

---

[15]   Sale Order, ¶¶ 4, 5.

[16]   Statement of Issues, at 1-2.

[17]   Sale Motion, at 2;

[18]   *Id.*

[19]   *Id.*

[20]   *Id.*, at 3; Transcript, at 11:14-25, 80:18-81:11.

plan for union employees.[21]   Following failed attempts at consensual amendments to the collective bargaining agreement to terminate the pension plan, the Debtors were unable to refinance their working capital debt and to obtain additional financing for their operations.[22] These circumstances prompted the filing of the Debtors' bankruptcy cases.[23]

### B.   The Marketing of the Debtors' Assets for Sale.

Both prior to and during the bankruptcy cases, the Debtors pursued opportunities for capital investment and refinancing of their indebtedness.[24]   Based upon their assessment of the capital markets, the Debtors determined that they were unlikely to locate a new investor or lender in sufficient time to enable the Debtors to reorganize.[25]   As a result, the Debtors decided to pursue a sale of their assets pursuant to 11 U.S.C. § 363(b) to maximize the value of the estates.[26]

---

[21]   Sale Motion, at 3; Transcript, at 54:12-24.

[22]   Sale Motion, at 3; Transcript, at 13:18-14:12, 80:18-81:11.

[23]   Sale Motion, at 3.  After they commenced their chapter 11 cases, the Debtors sought to use 11 U.S.C. § 1113 to reject their collective bargaining agreement, while continuing to negotiate with the union over consensual modifications of that agreement.  Sale Motion, at 4.  These negotiations concluded with an agreement to modify that agreement to permit the Debtors to terminate the pension plan.  *Id.*  On May 3, 2011, the bankruptcy court entered an order determining that the Debtors satisfied the financial requirements for distress termination of the pension plan, and the pension plan was terminated and turned over to the Pension Benefit Guaranty Corporation (the "PBGC") for administration.  *Id.*  The PBGC has asserted claims against the Debtors for unfunded benefit liabilities of approximately $60.8 million, claims for unpaid minimum funding of almost $13 million, claims under 29 U.S.C. § 1362 for approximately $26 million, and unliquidated claims for premiums.  Transcript, at 109:18-110:4. As a result, according to the PBGC, it "holds approximately seventy-five percent of the secured claims and approximately ninety-five percent of the unsecured claims in this case."  *Id.* at 109:20-22.  The PBGC asserts that over $7 million of its claims are secured claims and an additional approximately $1 million in claims are entitled to priority.  Claims Register, at 25.

[24]   Sale Motion, at 3-4; Transcript, at 13:18-14:12, 80:18-81:11.

[25]   *Id.*

[26]   *Id.*

In furtherance of the sale effort, the Debtors retained an investment banker, Macquarie Capital (USA), Inc. ("Macquarie"), and pursued, among other things, a marketing effort designed to identify potential acquirers.[27]   Macquarie contacted a significant number of parties that it believed would be interested in the Debtors' assets and business.[28]   To facilitate diligence, Macquarie and the Debtors created an electronic data room to accord potential acquirers the opportunity and ability to review materials necessary to assess the Debtors' assets and business.[29] The Debtors also obtained approval of procedures for submission and approval of bids.[30]

Ultimately, only two parties submitted bids for the Debtors' assets and business by the bidding deadline.[31]   However, the Debtors were unable to reach agreement with either of the bidders, and sought to identify other parties with which to consummate a sale.[32]

### C.     The Asset Purchase Agreement.

Kaiser had submitted an initial indication of interest regarding an asset purchase, but had not submitted a formal bid in connection with the bid procedures.[33]   Accordingly, the Debtors contacted Kaiser after they were unable to reach agreement with the two bidders.[34]   The renewed

---

[27]   Sale Motion, at 5-6; Transcript, at 14:13-15:17.

[28]   *Id.*

[29]   *Id.*

[30]   *Id.*

[31]   Sale Motion, at 5; Transcript, at 15:3-16:4.

[32]   Sale Motion, at 6; Transcript, at 16:9-20:23.

[33]   Sale Motion, at 5-6; Transcript, at 15:18-16:6.

[34]   Sale Motion, at 6-7; Transcript, at 20:16-23.

negotiations between the Debtors and Kaiser culminated in an asset purchase agreement (the "APA") containing the following material economic terms:[35]

- Kaiser would pay $500,000 of cash consideration to the Debtors' estates at the closing of the transaction;[36]

- Kaiser would acquire substantially all of the operating assets of the Debtors, while the Debtors would retain their existing accounts receivable and proceeds of the work in process generated prior to the closing;[37] and

- Kaiser would acquire a 90% beneficial interest in the Litigation Trust established to hold certain estate causes of action against Boeing and others,[38] which Kaiser would agree to fund, while the Debtors' estates would retain the remaining 10% beneficial interest in the Litigation Trust.[39]

Reflecting the integrated nature of the components of the transaction, the APA conditioned the closing of the transaction on the satisfaction of each of its material components.[40]  In particular, the transaction was expressly conditioned on the vesting of causes

---

[35]   Sale Motion, at 6-7; Transcript, at 20:24-21:15.

[36]   APA §§ 3.1, 3.2.

[37]   *Id.* §§ 2.1, 2.2.

[38]   Causes of actions vested in the Litigation Trust exclude: (i) an existing $10 million judgment against GE Capital Aviation Services, Inc., currently on appeal and pending before the Alabama Supreme Court, (ii) causes of action that arise under the Bankruptcy Code, and (iii) causes of action against the Debtors' current and former directors and officers.  Sale Order, ¶ 14 (modifying the definition of "Trust Causes of Action" in the APA).

[39]   APA § 2.1(b)(viii); Sale Motion, at 14-15; Transcript, at 40:21-41:9.  If and when the Debtors' estates receive an aggregate distribution from the Litigation Trust of $30 million, Kaiser's beneficial interest in the Litigation Trust increases to 100%. *Id.*

[40]   APA § 10.1.

of action against Boeing and others in the Litigation Trust and the entry of an order authorizing

the transaction containing, *inter alia*, the following language:[41]

> [T]he vesting of the Trust Causes of Action in the Litigation Trust shall not violate any restriction under applicable law regarding the assignability or transferability of the Trust Causes of Action, or result in any impairment or limitation of any kind in the full prosecution and recovery of the Trust Causes of Action that may otherwise result under applicable non-bankruptcy law from the assignment or transfer of the Trust Causes of Action.[42]

The Debtors entered into the transaction with Kaiser out of the belief that it would:

(a) increase their near-term collections over what would be obtained in liquidation, (b) provide

overall value to creditors, and (c) preserve some part of the Debtors' business as an operating

concern, thereby preserving hundreds of well-paid jobs.[43]   A prompt sale to Kaiser was the

Debtors' only remaining alternative to the liquidation and closing of the Debtors' business.[44]

### D.   The Bankruptcy Court Proceedings.

On August 19, 2011, the Debtors filed a motion seeking approval of the transaction with

Kaiser (as corrected, the "Sale Motion") and sought to have that Motion heard on shortened time.[45]

Time was of the essence because, among other things, pursuant to 11 U.S.C. § 365(d)(4)(B), the

deadline to assume the lease of the Debtors' operating facility was to expire on September 13,

2011.[46]   The assumption and assignment of that lease to Kaiser was an integral part of the

---

[41]   APA § 10.1(i).  A copy of the proposed order approving the Sale Motion (the "Proposed Sale Order") containing language consistent with the conditions in section 10.1(i) of the APA (in paragraph 4 of the Proposed Sale Order) is attached as Exhibit A to the Sale Motion.

[42]   Proposed Sale Order, ¶ 4.

[43]   Sale Motion, at 7-8; Transcript, at 90:14-23, 93:1-15.

[44]   *Id.*

[45]   Sale Motion, at 1, 22.  The corrected version of the Sale Motion was filed August 22, 2011.

[46]   Transcript, at 22:23-23:11, 26:20-27:1, 90:14-23, 117:14-22.

transaction – without it, the other operating assets to be purchased by Kaiser would lose virtually all of their value.[47]   The Debtors had concluded that if the lease were not promptly assumed and assigned to Kaiser, there would be no possible going-concern sale to Kaiser (or, for that matter, anyone else), and the Debtors' business would liquidate and close with the consequent loss of jobs and likely reduction in recovery from a sale of the Debtors' remaining assets.[48]

Boeing objected to the Sale Motion, asserting a scattershot of objections, including the contention (since disclaimed by the Debtors) that, pursuant to the Sale Motion, the Debtors proposed to sell assets to Kaiser not owned by the Debtors' estates, that the bankruptcy court lacked jurisdiction to approve the sale to Kaiser, that the Debtors had failed to demonstrate the "absolute fairness" of the formation of the Litigation Trust, and that no good faith finding was warranted because of Boeing's contention of a conflict between the role of the purchaser and its relationship with a former director of the Debtors who resigned in 2009.[49]

But all of these objections were subordinate to Boeing's real objection, which was based on its understanding that "[s]ince the beginning of the cases, counsel for the Debtors have

---

[47]   *Id.*; APA §§ 4.2(c), 10.1(h), (j).

[48]   Transcript, at 90:14-23, 93:1-15.

[49]   *Objection of the Boeing Company to the Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002 1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* (the "Objection"), at 5-10.

Virtually all parties other than Boeing, including the Official Committee of Unsecured Creditors and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), supported the Sale Motion. Transcript, at 91:6-93:15. All objections to the Sale Motion by parties other than Boeing were resolved at or prior to the hearing on the Motion. *See, e.g., id.* at 52:1-25.  In addition, the objections by Boeing to the Sale Motion unrelated to the vesting of the causes of action in the Litigation Trust were likewise resolved at or prior to the hearing. *Id.* at 83:22-84:5, 95:5-14.

advised Boeing that the Debtors intend to assert claims against Boeing."[50]   Boeing's principal

objection was that the vesting of causes of action against it in a litigation trust potentially

contravened the Third Circuit Court of Appeal's decision in *Integrated Solutions, Inc. v.*

*Service Support Specialties, Inc.,* 124 F.3d 487 (3d Cir. 1997),[51] which held that in certain

circumstances anti-assignment restrictions under state law preclude the outright sale of causes of

action held by a bankruptcy estate to third-party purchasers. *Id.* at 492-94.

Both the Debtors and Kaiser replied to the Boeing Objection, with Kaiser focusing its

response on the contention that the vesting of causes of action in the Litigation Trust violated

*Integrated Solutions.*[52]  Both pointed out that the Debtors' estates were *not* selling estate causes

of action to a third party, as happened in *Integrated Solutions*, but, rather, were vesting those

claims in a trust, and retaining a portion of the recovery for the benefit of the Debtors' estates.[53]

The Litigation Trust was being appointed as a representative of the Debtors' estates.[54]  Because

---

[50]   Objection, at 3.

[51]   *Id.* at 2-4.

[52]   *Debtors' Response to the Objection of the Boeing Company to the Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002 1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* (the "Debtors Reply"), and *Reply of Kaiser Aircraft Industries, Inc. to the Objection of the Boeing Company to the Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002 1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* (the "Kaiser Reply").

[53]   Debtors Reply, at 4-5; Kaiser Reply, at 2-8.

[54]   *Id.*; Transcript, at 93:17-95:3; Litigation Trust Agreement ("LTA"), § 2.1(a) ("The Debtors shall (and hereby do) vest in the Litigation Trust, as a representative of the Estates, the Trust *(Continued)*

the estates were benefitting from the pursuit of the claims by the Litigation Trust, the Sale

Motion did not implicate *Integrated Solutions*. Instead, the vesting of the causes of action in the

Litigation Trust received support from the Third Circuit's more recent *en banc* decision in

*Official Committee of Unsecured Creditors of Cybergenics Corp. v Chinery*, 330 F.3d 548

(3d Cir. 2003), which held that the bankruptcy court may properly designate third parties to

prosecute estate causes of action on behalf of the estate when the debtor is unable or unwilling to

do so. *Id.* at 568-69. Here, the Debtors were financially unable to assume the financial

commitment required to pursue their claims against Boeing absent the arrangements provided for

in the APA and Sale Order.[55]

### E.     The Sale Order and the Appeal.

The Sale Motion was orally granted at the conclusion of the hearing on September 1,

2011.[56] The Sale Order was entered on September 6, 2011.[57] In it, the bankruptcy court

provided that Kaiser was a good faith purchaser entitled to the protection of 11 U.S.C. § 363(m):

> The APA and all ancillary documents thereto, including, without
> limitation, the Litigation Trust Agreement, were negotiated and proposed, and
> have been entered into by the parties in good faith within the meaning of Section
> 363(m) of the Bankruptcy Code, at arm's length bargaining positions, and without
> collusion; [Kaiser] is a good faith purchaser within the meaning of Section
> 363(m) of the Bankruptcy Code and entitled to the protections thereof . . . .[58]

And again:

---

Assets for the benefit and on behalf of the Beneficiaries."). The LTA is attached as Exhibit B to
the Sale Order.

[55] Sale Motion, at 7-8; Transcript, at 90:14-23, 93:1-15.

[56] Transcript, at 112:6-20.

[57] Sale Order, at 17.

[58] *Id.*, ¶ L.

All of the transactions contemplated by the APA, the closing of the Sale, assignment of the Assumed Executory Contracts and Unexpired Leases, the establishment of the Litigation Trust, and the vesting of the Trust Causes of Action in the Litigation Trust shall be protected by Section 363(m) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.[59]

In addition to authorizing the transaction and preserving all of Boeing's pre-bankruptcy defenses to causes of action against it,[60] the Sale Order also provides that:

[T]he vesting of the Trust Causes of Action in the Litigation Trust shall not violate any restriction under applicable law regarding the assignability or transferability of the Trust Causes of Action, or result in any impairment or limitation of any kind in the full prosecution and recovery of the Trust Causes of Action that may otherwise result under applicable non-bankruptcy law from the assignment or transfer of the Trust Causes of Action.[61]

Although the bankruptcy court authorized the Debtors and Kaiser to consummate the transaction immediately upon entry of the Sale Order,[62] at the hearing on the Sale Motion, the Debtors and Kaiser committed on the record not to consummate the transaction prior to September 8, 2011, a full week later, to accord Boeing an opportunity to seek a stay of the Sale Order from the District Court.[63]  Boeing knew that its failure to obtain a stay would likely cause its appeal of the Sale Order to be moot.[64]  For that reason, Boeing orally moved the bankruptcy court for a stay of the Sale Order pending appeal.[65]  That oral motion was denied.[66]  While the parties' agreement to defer consummation of the transactions for a week following the hearing

---

[59]  *Id.*, ¶ 8.

[60]  *Id.*, ¶¶ 2, 4, 5.

[61]  *Id.*, ¶ 4.

[62]  *Id.*, ¶ 27.

[63]  Transcript, at 112:21-113:3, 115:7-15.

[64]  *Id.* at 113:5-114:10, 115:7-15, 118:19-119:16.

[65]  *Id.* at 118:19-119:16.

[66]  *Id.*

accorded Boeing ample opportunity to seek a stay from this Court, it declined to do so. Accordingly, the sale to Kaiser closed on September 8, 2011 and the action against Boeing was commenced the following day.[67]   Boeing did not file its notice of appeal until the last possible day, on September 19, 2011.[68]

### F.   Consummation of the Transaction.

The transaction with Kaiser has been consummated in accordance with its terms.[69] Among other things, (i) Kaiser has paid the $500,000 purchase price to the Debtors, (ii) executory contracts and unexpired leases have been assumed and assigned to Kaiser, and Kaiser has made nearly $100,000 in required payments to cure all defaults under those contracts and leases, (iii) Kaiser's parent company has issued a $100,000 guarantee in favor of the lessor of the Debtors' operating facility and additionally has capitalized Kaiser with $7,000,000, (iv) Kaiser has commenced operations and established relationships with customers and vendors, and is actively seeking new business opportunities, (v) causes of action have been vested in the Litigation Trust, (vi) the parties have appointed the Trustee and the Trust Oversight Committee of the Litigation Trust, (vii) Kaiser has capitalized the Litigation Trust with an initial $500,000, and (viii) the Litigation Trust has commenced a lawsuit against Boeing in Alabama state court that asserts ten separate causes of action and seeks damages in excess of $100 million.[70]

In sum, the Debtors, Kaiser and the Litigation Trust have all acted in reliance on the Sale Order in consummating the transaction and taking these various additional steps.[71]

---

[67]   Burakow Aff., ¶ 3; Notice of Filing Complaint, at 1, Exh. "A".

[68]   Notice of Appeal [Dkt. No. 1], at 6.

[69]   Burakow Aff., ¶¶ 3-4.

[70]   *Id.*; Notice of Filing Complaint, at 1, Exh. "A".

[71]   *Id.*

## III.

## <u>ARGUMENT</u>

This appeal should be dismissed as moot pursuant to 11 U.S.C. § 363(m).  That section provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).

In this Circuit, "two conditions be met before an appeal becomes moot under section 363(m): (1) the underlying sale or lease must not have been stayed pending appeal, and (2) reversing or modifying the authorization to sell or lease would affect the validity of the sale or lease." *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000).  Here, the sale to Kaiser indisputably was not stayed.  Although Boeing orally moved the bankruptcy court for a stay of the Sale Order, that oral motion was denied and no motion for a stay was ever filed with this Court.[72]  Therefore, the only issue for this Court to decide is whether the relief sought by Boeing in this Appeal would reverse or modify the bankruptcy court's authorization to sell the Debtors' assets to Kaiser or would otherwise affect the validity of the sale of those assets to Kaiser.  Because it would do so, this appeal is moot.

Under this Circuit's authorities, "the validity of the sale" is affected whenever the relief requested on appeal would result in a change in the material terms of the bargain struck between the buyer and seller, including, for example, any *de facto* change in the sale price. *Pittsburgh Food & Bev. v. Ranallo*, 112 F.3d 645, 649 (3d Cir. 1997) ("'One cannot challenge the validity of

---

[72]   Transcript, at 118:19-119:16.

a central element of a purchase, the sale price, without challenging the validity of the sale itself.'"), *quoting In re The Charter Co.*, 829 F.2d 1054, 1056 (11th Cir. 1987).

In *Rickel Home*, for example, the Third Circuit dismissed as moot under § 363(m) the debtor's landlord's appeal from the district court's order authorizing the assumption, assignment, and sale of the debtor's lease with the landlord to an asset purchaser and the excising of a use restriction in that lease because an adverse determination on those issues would "affect the validity of the sale." *Rickel Home*, 209 F.3d at 305-06.  Reversing the assignment of the lease would dramatically affect the assets that the purchaser was acquiring or its ability to make use of those assets.  *Id.*  Under those circumstances, the Third Circuit held that the assignment of the lease was integral to the transaction and that any challenge to it was moot.  *Id.*

Similarly, in *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490 (3d Cir. 1998), the Third Circuit dismissed as moot under § 363(m) the appeal by the winning bidder at an auction of a franchise agreement of an order rejecting a pre-bankruptcy buy/sell agreement, also with the winning bidder for the purchase of that same franchise agreement. *Krebs*, 141 F.3d at 497-500.  The Third Circuit determined the winning bidder's appeal to be moot because the reversal of the rejection of the buy/sell agreement would amount to an attack on the auction. *Id.* at 499 ("Naturally, this would have an impact on the validity of the auction sale of the Jeep-Eagle franchise, because reversing the rejection would necessarily require reversing the subsequent assumption and assignment of the underlying franchises.  Clearly, this remedy is not permitted by section 363(m)."). The Third Circuit likewise rejected as moot the winning bidder's argument that it should be able to reduce the amount of its purchase price at the auction based upon the amount that it paid pre-bankruptcy under the buy/sell agreement.  *Id.* at 500 ("[A] refund would be an attack on the sale price, impermissibly affecting the validity of the

sale."). In other words, stripping away assets sold to a purchaser in a consummated bankruptcy sale is not permitted under § 363(m), whether the attempt to strip away those assets is direct or indirect. Likewise, *de facto* modifications to the purchase price of the assets is not permitted.

Finally, in *Ranallo*, the Third Circuit affirmed the district court's dismissal as moot under § 363(m) the appeal by PFB, an out-of-possession debtor, of an order authorizing a sale by the chapter 11 trustee of the debtor estate's assets to an asset purchaser. *Ranallo*, 112 F.3d at 649-51. Critically, PFB, the out-of-possession debtor, did not seek to nullify the sale itself, but instead sought declaratory judgments regarding the impropriety of the sale that would form a basis for damages claims against the chapter 11 trustee and the asset purchaser for their involvement in the improper sale. *Ranallo*, 112 F.3d at 649-50. The Third Circuit determined that the requested relief was tantamount to an impermissible adjustment to the sale price:

> [S]ection 363(m) does not say that absent a stay the reversal or modification of an order authorizing a sale cannot lead to the nullification of a sale. Instead, section 363(m) provides that without a stay the reversal or modification "does not affect the validity" of the sale. Plainly, a finding against Ranallo as the trustee or American as the buyer on any of the inquiries that PFB proposes the bankruptcy court undertake ultimately leading to the imposition of the "equitable remedy" PFB seeks, though not nullifying the sale would affect its validity, as the inquiries all seek to demonstrate that the sale was flawed. For example, what would be the purpose in an appeal from an order approving a sale of a finding that Ranallo and American "knew that the Bankruptcy Court did not have authority to sell" Smith's assets other than to affect the validity of the sale? Furthermore, if the bankruptcy court, on remand from the district court, required Ranallo or American to pay PFB additional money, as PFB suggests that it could do, surely the court's order would affect the validity of the sale because the order would be founded on a holding that the sale price was inadequate. Thus, the appeal to the district court was moot.

*Ranallo*, 112 F.3d at 649-50. *Ranallo* and the other foregoing authorities thus teach that even an indirect attack on a sale is moot under § 363(m) where the requested relief changes the nature or value of the assets acquired, or changes the consideration in the hands of either the buyer or seller.

Here, Boeing seeks two forms of relief.[73]   First, Boeing seeks to block the vesting of causes of action against it in the Litigation Trust.[74]   Reversing this vesting, however, would have a clear, adverse effect on the sale to Kaiser.   Among other things, Kaiser paid $500,000 in cash consideration for, *inter alia*, a 90% beneficial interest in the Litigation Trust and has separately funded the Trust with $500,000 to pursue claims against, amongst others, Boeing.[75]   That interest in the Litigation Trust obviously will be valueless if there are no causes of actions vested in the Trust.   This is an impermissible attack on the nature and value of the purchased assets.

Boeing's second form of relief fares no better.   Accordingly, Boeing's request that the bankruptcy court's ruling on the propriety of the vesting be vacated so that the issue can be litigated at some future time in some other court also runs afoul of § 363(m) as it dilutes and threatens to undermine the nature and value of the beneficial interests that Kaiser purchased and that it relied on in funding the Litigation Trust with $500,000.[76]   As it presently stands, Kaiser and the Litigation Trust have relied on the Sale Order's provision that the vesting of causes of action in the Litigation Trust did not give Boeing a new defense to those potential claims.[77]   To be clear, the Debtors and Kaiser do not believe that the vesting of the causes of action against Boeing in the Litigation Trust violates any applicable anti-assignment restrictions under state law.[78]   Nonetheless, reinstating Boeing's potential new defense on appeal would have an adverse effect on the nature and value of the causes of action in the hands of the Litigation Trust and,

---

[73]   Statement of Issues, at 1-2.

[74]   *Id.*

[75]   Burakow Aff., ¶ 4; APA §§ 2.1(b)(viii), 3.1.

[76]   Burakow Aff., ¶ 4; Statement of Issues, at 1-2.

[77]   Sale Order, ¶ 4.

[78]   *See, e.g.,* Debtors Reply, at 5-9.

consequently, an adverse effect on Kaiser's beneficial interest.  It was for this very reason that Kaiser conditioned the consummation of the transaction on the entry of an order containing the language now set forth in paragraph 4 of the Sale Order.[79]

Courts addressing the issue have flatly refused to allow appellants to "squeeze around the direct bar" of § 363(m) by characterizing their appeals as concerning something other than the sale itself where the appeal nonetheless seeks to "affect aspects of the deal of which a purchaser would want to be certain prior to completing the purchase," particularly where the requested relief seeks to attack conditions to the closing of the sale or some other part of the overall "package." *In re Stadium Management Corp.*, 895 F.2d 845, 848 (1st Cir. 1990).  In particular, a challenge to a "provision of an order authorizing the sale of the debtor's assets affects the validity of the sale when the . . . provision is integral to the sale of the estate's assets. A provision is integral if the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange." *Official Comm. of Unsecured Creditors v Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003, 1007 (8th Cir. 2002) (appeal of sale order containing provision releasing purchaser, purchaser's affiliates, and debtor's lender from certain causes of action was moot under § 363(m) even though the only provision challenged was the release provision), *citing Cinicola v. Scharffenberger*, 248 F.3d 110, 125-26 (3d Cir. 2001), *and Stadium Management*, 895 F.2d at 849.

As noted above, the vesting of the causes of action in the Litigation Trust and the language of the Sale Order providing that the vesting did not accord Boeing a new defense were integral parts of the overall transaction, as reflected by the fact that, under section 10.1(i) of the

---

[79]   APA § 10.1(i); Proposed Sale Order, ¶ 4.

APA, the closing of the transaction was expressly conditioned upon the vesting of the causes of action and the bankruptcy court's ruling concerning whether that vesting gave rise to any defense.[80]   Moreover, as suggested by the unrebutted, sworn testimony of one of Kaiser's representatives at the bankruptcy hearing concerning the sale, there was no approval from Kaiser's board of directors for its management to acquire the Debtors' operating assets if the vesting of the causes of action in the Litigation Trust were not an aspect of the transaction or if the ability of the Litigation Trust to pursue those causes of action were less than sure.[81] *See, e.g., Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248-49 (2d Cir. 2010) (logic dictates that "the sale price of the debtor's assets will be driven down if the purchaser is not guaranteed ownership of those assets upon closing of the sale" and "a purchaser will demand a discount for the purchase of assets in which the terms and conditions of the sale cannot be protected from challenge even after closing the sale"); *Stadium Management*, 895 F.2d at 849 ("[T]he assumption and assignment of the sublease was integral to the restructuring of debtor-creditor relations.   It was thus within the bankruptcy court's power to determine the claims of the parties with respect to the sublease so that a prospective purchaser would know what he was getting.   This increased the value of the Stadium and benefits all creditors.   Thus, the assignment of the sublease was integral to the sale and removing it from the sale would have adversely affected the terms of the sale.").   For these reasons, the Appeal attacks "the validity of the sale" and, as such, is moot under § 363(m).

Finally, it should be noted that so long as the elements of § 363(m) are present, an appeal affecting the validity of a sale will be dismissed as moot whether or not the bankruptcy court was

---

[80]   *Id.*

[81]   Transcript, at 47:13-49:15.

correct or incorrect in entering the appealed order. *Ranallo*, 112 F.3d at 650 ("'At this juncture, it matters not whether the authorization was correct or incorrect.  The point is that the proper procedures must be followed to challenge an authorization under § 363(b).  As stated earlier, § 363(m) and the cases interpreting it have clearly held that a stay is necessary to challenge a bankruptcy sale authorized under § 363(b).'"), *quoting In re Sax*, 796 F.2d 994, 997-98 (7th Cir. 1986).  Although the Debtors and Kaiser believe that the bankruptcy court correctly entered the Sale Order in reliance on *Cybergenics* and the other authorities that the Debtors and Kaiser cited to the bankruptcy court below,[82] even if the bankruptcy court were somehow incorrect, it is crystal clear that because the elements of § 363(m) are present, this Appeal is now moot.

## IV.

## CONCLUSION

For the foregoing reasons, the Appeal should be dismissed as moot.

---

[82]   Debtors Reply, at 4-5; Kaiser Reply, at 2-8.

Dated: October 27, 2011
      Wilmington, Delaware

                          PACHULSKI, STANG, ZIEHL & JONES LLP

                          */s/ Bruce Grohsgal*
                          Bruce Grohsgal (DE Bar No. 3583)
                          919 North Market Street, 17th Floor
                          Wilmington, DE  19801
                          Tel:    (302) 778-6403
                          Fax:    (302) 652-4400
                          Email: bgrohsgal@pszjlaw.com

                              -and-

                          KLEE, TUCHIN, BOGDANOFF & STERN LLP

                        Thomas E. Patterson (*pro hac vice* pending)
                        David M. Guess (*pro hac vice* pending)
                        1999 Avenue of the Stars, Suite 3900
                        Los Angeles, CA 90067
                        Tel:    (310) 407-4000
                        Fax:    (310) 407-9090
                        Email: tpatterson@ktbslaw.com
                               dguess@ktbslaw.com

                        *Attorneys for Kaiser Aircraft Industries, Inc.*