IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Civil Action No. 1:11-cv-01003 (JEI)

Bankruptcy Court Case No. 11-10452-PJW (Jointly Administered)

In re ALABAMA AIRCRAFT INDUSTRIES, INC., *et al., Debtors*

THE BOEING COMPANY, *Appellant,*

v.

ALABAMA AIRCRAFT INDUSTRIES, INC. and
KAISER AIRCRAFT INDUSTRIES, INC., *Appellees.*

**THE BOEING COMPANY'S BRIEF IN OPPOSITION TO
KAISER AIRCRAFT INDUSTRIES, INC.'S
MOTION TO DISMISS APPEAL AS MOOT [11 U.S.C. § 363(m)]**

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Email:          loizides@loizides.com

Robert M.D. Mercer
(*Pro Hac Vice Application Pending*)
Eric P. Schroeder
(*Pro Hac Vice Application Pending*)
Bryan Cave LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309-3488
Telephone:    (404) 572-6600

Attorneys for the Boeing Company

# TABLE OF CONTENTS

I.     STATEMENT OF NATURE AND STAGE OF PROCEEDINGS............................1

II.    SUMMARY OF ARGUMENT.......................................................................2

III.   COUNTERSTATMENT OF FACTS.............................................................3

      A.     The Adoption of the Unprecedented Litigation Trust Outside
           a Chapter 11 Plan Is Novel and Was Done Without the
           Benefit of a Full Record............................................................3

      B.     Neither the Testimony of the Representatives of Kaiser and
           the Debtors, the Asset Purchase Agreement, Nor the
           Order Reflect that the Litigation Trust Was Integral to the "Sale."....................5

IV.    ARGUMENT.....................................................................................6

      A.     Section 363(m) Does Not Bar Review of Whether the
           Bankruptcy Court Could Approve the Establishment of a Litigation
           Trust.......................................................................................6

           i.     Boeing is Not Asking the Court to Review a "Sale.".........................6

           ii.    Section 363(m) Does Not Moot Boeing's Appeal............................8

                 1.     Kaiser's Argument Regarding Integral Provisions
                     Fails as a Matter of Law ................................................9

                 2.     Kaiser Cannot Show that the Litigation
                     Trust Was Integral to the "Sale."....................................11

                 3.     Kaiser Cannot Show that It Justifiably Relied
                     on the Order...............................................................12

      B.     Given that Boeing Did Not Have a Full and Fair Opportunity
           to Litigate the Issues Which Led to the Bankruptcy Court's
           Incorrect Ruling, It Is All the More Reason that the Court
           Should Consider the Merits of Boeing's Appeal....................................14

           i.     Boeing Did Not Have a Full and Fair Opportunity to
                Litigate the Issues..................................................................14

           ii.    The Bankruptcy Court Clearly Erred in Its Rulings..........................18

ii

V.   CONCLUSION...................................................................................20

## TABLE OF CITATIONS

**Cases**

*Anheuser-Busch, Inc. v. Miller* (*In re Stadium Mgmt. Corp.*), 895 F.2d 845 (1st Cir. 1990) ....................................................................................................................9, 10

*Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25 (9th Cir. BAP 2008) .......................................................................................................................8, 9

*In re Crescent Mfg. Co.*, 122 B.R. 979 (Bankr. N.D. Ohio 1990) ...............................19

*In re Goody's Family Clothing, Inc.*, 401 B.R. 656 (D. Del. 2009)..............................12

*Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997) ...............................................................................................................2, 3, 6, 7

*In re Joshua Slocum*, 922 F.2d 1081 (3d Cir. 1991).....................................................8

*Krebs Chrystler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490 (3rd Cir. 1998) .............................................................................................................................10

*L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291 (3d Cir. 2000)...........................................................................................................10

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003)..............................................................................................*passim*

*Official Comm. of Unsecured Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003 (8th Cir. 2003) ................................................................................................9, 10

*In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 329 (3d Cir. 2010)....................12

*Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645 (3d Cir. 1997) ..............10

*Stern v. Marshall*, 131 S. Ct. 2594 (June 23, 2011)......................................................7

**Statutes/Rules**

11 U.S.C. § 363(m) .................................................................................................*passim*

Fed. R. Bankr. P. 9013 ...........................................................................................14, 17

Local Civil Rule 7.1.3(c)(1)(E)......................................................................................3

6176971.3

## Secondary Sources

Collier on Bankr. (16th ed. 2010) ¶ 1109.02[1]...........................................................................19

v

## I.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On September 6, 2011, after a hearing held on September 1, 2011 (the "Hearing"), the

United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered

the order [D.I. 486][1] (the "Order") authorizing the sale of substantially all of the assets Alabama

Aircraft Industries, Inc. and its affiliated debtors (collectively, the "Debtors") and the purported

formation of a litigation trust (the "Litigation Trust").   On September 21, 2011, The Boeing

Company ("Boeing") filed its *Notice of Appeal* of the Order [D.I. 511].   On October 3, 2011,

Boeing filed its Statement of Issues.   On October 17, 2011, Kaiser Aircraft Industries, Inc.

("Kaiser") subsequently filed its cross-designation of items to be included in the record on appeal

[District D.I. 3].[2]   On October 20, 2011, the appeal was docketed, but was referred to the

Appellate Mediation Panel with briefing deferred [District D.I. 4].

On October 27, 2011, Kaiser filed *Kaiser Aircraft Industries, Inc's Motion to Dismiss*

*Appeal as Moot [11 U.S.C. § 363(m)]* [District D.I. 7] (the "Motion to Dismiss Appeal") and

*Brief in Support of Kaiser Aircraft Industries, Inc's Motion to Dismiss Appeal as Moot [11*

*U.S.C. § 363(m)]* [District D.I. 8] (the "Kaiser Brief").   The parties stipulated that Boeing's

response to the Motion to Dismiss was due on or before November 14, 2011 [District D.I. 9].

Boeing timely files this brief in opposition.

---

[1] All citations with a "D.I." designation are included in *Boeing Co.'s Statement of Issues to be Presented and Designation of Items to be Included in the Record* (the "Statement of Issues") [District D.I. 2].
[2] All citations with a "District D.I" designation are citations to the District Court for the District of Delaware docket.

1

## II.   SUMMARY OF ARGUMENT

The question before the Court is whether the Bankruptcy Court's unprecedented decision to approve the formation of a Litigation Trust outside a chapter 11 plan is shielded from appellate review when: (i) approval of the Litigation Trust was based solely on a novel, last-minute argument that the assignment of the Trust Causes of Action into the Litigation Trust was not a "sale," which would have been prohibited by *Integrated Solutions, Inc. v. Service Support Specialties, Inc.*, 124 F.3d 487 (3d Cir. 1997); and (ii) the Bankruptcy Court in fact found that the formation of the Litigation Trust was a "use" of property. Since section 363(m) of the Bankruptcy Code in relevant part only provides mootness protection to "sales," Kaiser's argument that Boeing's appeal is moot fails as a matter of law. Kaiser tries to escape this result by arguing for the first time on appeal that the establishment of the Litigation Trust is nonetheless protected by section 363(m), as it was allegedly "integral" to the "sale" of the beneficial interest in the Litigation Trust. This argument is similarly unavailing, not only because this argument flies in the face of the Order and the testimony from both the Debtors' and Kaiser's witnesses at the Hearing, but also because the transfer of the beneficial interest is no more of a "sale" than the transfer of the causes of action into the Litigation Trust, which Kaiser steadfastly maintains is not a "sale." Finally, even if Kaiser were to prevail on all of its other arguments, its motion remains fatally flawed because there is no evidence that Kaiser has actually detrimentally relied on the Order.

In short, Kaiser seeks dismissal of the appeal following an attempted manipulation of section 363(m) of the Bankruptcy Code based on a rushed bait and switch. Specifically, the Debtors' contention that they were not "selling" their claims to the Litigation Trust formed the bait below and was offered to evade the prohibition on the sale of non-assignable causes of

2

action as set forth in *Integrated Solutions*. The Bankruptcy Court agreed and found that the

Debtors' transfer of the claims to the Litigation Trust was a "use" and not a "sale" of property.

Now for the switch: Kaiser argues for the first time on appeal that there was a "sale" because it

purchased the "benefit" of the claims (and Kaiser represented at the Hearing that it had no idea

what these claims actually were) to set up the argument on appeal that section 363(m) mootness

applies to the transaction. The two-faced argument fails. Accordingly, Kaiser cannot have it

both ways, and its motion to dismiss Boeing's appeal should be denied.

### III.   COUNTERSTATEMENT OF FACTS

Kaiser's Brief omits and mischaracterizes crucial facts about the background of these

cases and the Hearing. Boeing therefore includes this Counterstatement of the Facts pursuant to

Local Civil Rule 7.1.3(c)(1)(E).

### A.   The Adoption of the Unprecedented Litigation Trust Outside a Chapter 11 Plan Is Novel and Was Done Without the Benefit of a Full Record.

The Litigation Trust approved by the Bankruptcy Court is simply unprecedented.[3]

Though Kaiser repeatedly claimed below that establishing a litigation trust outside of a chapter

11 plan is unremarkable, Kaiser did not then—and has not now—identified any authority in

support of this proposition.[4]

The attorney for the Office of the United States Trustee of the District of Delaware

echoed Boeing's concern at the Hearing, pointedly agreeing that the Litigation Trust was

unprecedented and at best, questionable.[5] Further, the hearing on the formation of the Litigation

---

[3] *See* September 1, 2011 Hearing Transcript ("Transcript") [D.I. 508], at 96:24-25 (Kaiser and the Debtors left unchallenged the assertion that "they haven't pointed to one single case where a litigation trust has been established in the 363 context.").

[4] *Id.*

[5] *Id.* at 107:13-23; 108:10-16 ("[I've] never really seen this issue where a litigation trust has been created prior to even the filing of a plan . . .. But a litigation trust usually is set up in the context

3

Trust was rushed because the Debtors told the Court that the sale would fall apart if the Court did not approve it without delay.[6] This prevented the Bankruptcy Court and Boeing from fully addressing and considering the full ramifications of the Litigation Trust.[7] The representations by the Debtors notwithstanding, there was no real emergency or exigency warranting the Bankruptcy Court's expedited consideration.[8] Although the Debtors asserted that the Hearing had to proceed on September 1, 2011, there was no reason that the Hearing could not have been delayed by a few days or even two weeks, so the parties could address the new and completely novel arguments raised at the eleventh hour by the Debtors and Kaiser.[9] Further, the late-filed reply briefs introducing a new and completely novel basis for the establishment of the Litigation Trust on the eve of the Hearing created a situation where neither the Court nor any other party had sufficient time to be prepared in a meaningful way.[10] In particular, the Third Circuit's

---

of the Chapter 11 plan process, the litigation trust goes forward with a litigation trustee and there is the post-confirmation distributions of trust proceeds and the like. So we've never really seen this provision before and I can't recall seeing it anywhere else. With respect to the litigation trust, I'm not sure even how that even how that fits into the Section 363 process. Again, having never seen this issue come up before, not really sure how it fits into a 363 sale. To the extent that it does fit into and the Third Circuit law applies in that case, it appears that it may not work.")

[6] *Debtors' Motion Pursuant to Del. L.R. 9006-1(e) for an Order Shortening the Time for Notice of the Hearing to Consider Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Assign Certain Claims to a Litigation Trust* ("Mot. to Expedite") [D.I. 451].

[7] *See id.*

[8] *See infra notes 69-73.*

[9] *Id.*

[10] *See Debtors' Response to the Objection of the Boeing Co. to the Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014 and Local Rules 2002-1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain*

4

decision in *Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330

F.3d 548 (3d Cir. 2003), on which the Bankruptcy Court relied in approving the Litigation Trust,

was not mentioned by the Debtors and Kaiser until they filed their eleventh hour reply briefs on

the afternoon of August 31, 2011 with the Hearing being held at 10:00 a.m. on September 1,

2011.[11]

> **B.      Neither the Testimony of the Representatives of Kaiser and the Debtors, the Asset Purchase Agreement, Nor the Order Reflect that the Litigation Trust Was Integral to the "Sale."**

Kaiser's *current* position, that the Litigation Trust was "integral" to the sale, is

diametrically at odds with the testimony of the representatives of Kaiser and the Debtors

below.[12]  For example, Vikram Chitkara, who represented the Debtors in the negotiation of the

Asset Purchase Agreement, testified that the causes of action that were to "vest" in the Litigation

Trust were "undefined at this point" and he could not "call them anything other than

speculative."[13]  Nicholas Burakow – the representative of Kaiser tasked with negotiating the deal

– testified that Kaiser had not valued the causes of action against Boeing[14] or even decided

whether they intended to pursue them.[15]  This testimony was obviously false given that eight

---

Claims Therein ("Debtors' Reply Mot.") [D.I. 472]; *see also Reply of Kaiser Aircraft Industries, Inc. to Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* ("Kaiser's Reply Mot.") [D.I. 473].
[11] *Id.*
[12] *See infra* notes 13-15.
[13] Transcript, at 27:10-11.
[14] *Id.* at 47:8-12.
[15] *Id.* at 40:8-10 ("[B]ut *before deciding to pursue them or not* we have to really do a cost benefit also as what's it going to cost.") (emphasis added); *id.* at 84:9-19 (Debtors' counsel commented in closing argument that Kaiser *might* be willing to fund the Litigation Trust and to pursue the claims).

days later the Litigation Trust filed a *9 count, 91 page, 203 paragraph complaint in Alabama state court—one day after the formation of the Litigation Trust and three days after the entry of the Order.*[16]  Given the testimony before the Bankruptcy Court, Kaiser cannot now claim that the Litigation Trust was "integral" to the sale.[17]  To the contrary, Kaiser's witness was unable to state whether the Litigation Trust was an integral part of the deal:

> Maybe we – we – maybe the board would still want to do it.  Maybe we'd want to change the price.[18]

Thus, neither Kaiser nor the Debtors presented any evidence that the deal could not be consummated without inclusion of the Litigation Trust.

## IV.   ARGUMENT

### A.   Section 363(m) Does Not Bar Review of Whether the Bankruptcy Court Could Approve the Establishment of a Litigation Trust.

#### i.   Boeing Is Not Asking the Court to Review a "Sale."

To obtain approval of the Litigation Trust, the Debtors and Kaiser argued that transferring the Trust Causes of Action into the Litigation Trust did not represent a "sale" of Debtors' claims, which would be prohibited under Alabama law and the Third Circuit decision in *Integrated Solutions.*[19]  The Debtors and Kaiser made this argument even though they were

---

[16] Notice of Filing Compl. [D.I. 510].

[17] *See supra* notes 13-15.

[18] Transcript, at 48:12-13; *see also id.* at 47:13-17.

[19] *See, e.g.,* Transcript, at 84:5-9 ("But Boeing's reliance on *Integrated Solutions*, the Third Circuit case, which says you cannot transfer the causes of action to a third party when that transfer would violate state law, is not applicable here, because there is no sale of the causes of action. What we're asking the Court to approve is vesting the right to pursue those causes of actions with a trust . . .."); *id.* at 84:20-22 ("So there is no actual sale of the causes of action themselves so *Integrated Solutions*, Your Honor, is not really an issue in this case."); *id.* at 88:16-17 ("[W]e're not actually seeking the sale of the causes of action."); *id.* at 89:3-8 ("Again, there's no sale of property resulting from claims being brought by the estate under 157(b)(2)(N). All we're asking the Court to do is approve the vesting of these rights into the trust that can be pursued on behalf of the debtor, so 157(B)(2)(N) is not applicable."); *id.* at 89:14-17 ("[T]he

6

simultaneously asking the Court to rule that section 363(m) protected the Litigation Trust. At the

Hearing, counsel for Boeing pointed out the problem created by Kaiser's attempt to have it both

ways.[20] Neither the Bankruptcy Court, counsel for the Debtors, nor counsel for Kaiser ever

attempted to rectify the inherent conflict created by Debtors' and Kaiser's position. Now, for the

first time on appeal, Kaiser argues that another part of the establishment of the Litigation Trust

(the transfer of the beneficial interest to Kaiser) was a "sale."[21] Of course, the mere fact that

something is embedded in a "sale" order does not mean that section 363(m) automatically

applies—otherwise parties could use purported "sales" to thwart Article III appellate review.[22]

Rather, the Court must look to the substance of the particular aspect of the order being

challenged.

In this case, Kaiser's attempted fancy footwork notwithstanding, the fatal flaw in Kaiser's

motion is that the Order makes clear that the establishment of the Litigation Trust is not a "sale"

but is instead a "use" of property within the meaning of the Bankruptcy Code.[23] Accordingly,

---

vesting of that authority in a trust is a non-ordinary-course transaction and it would require the
debtor to receive permission to do that from this Court, and that's why the motion was filed.").
In *Integrated Solutions*, the Third Circuit held that federal bankruptcy laws did not preempt New
Jersey anti-assignment laws, and thus the trustee was precluded by New Jersey law from
assigning the debtor's tort claims to a prospective purchaser.  124 F.3d 487, 493.

[20] Transcript, at 102:7-13.

[21] *See* Kaiser Brief, at 14-20.

[22] In attempting to evade Article III review of the establishment of the Litigation Trust and the
Alabama state-law assignability issues that are necessarily intertwined with the Litigation Trust,
Kaiser attempts to make the bankruptcy court's decision a nonreviewable final judgment here.
This is an exercise of judicial power expressly reserved for an Article III court. *Cf. Stern v.
Marshall,* 131 S. Ct. 2594 (June 23, 2011) (bankruptcy court lacked constitutional authority to
enter a final judgment on a state law counterclaim).

[23] *See* Order ¶ K ("The establishment of the Litigation Trust pursuant to the terms of the APA
and the Litigation Trust Agreement is a fair and appropriate *use* of the Debtors' property.")
(emphasis added).

the very terms of the Order demonstrate that section 363(m) does not shield the establishment of the Litigation Trust from review.[24]  Kaiser cannot escape the very Order it helped craft.

Kaiser instead argues for the first time on appeal that the triggering "sale" for purposes of section 363(m) was its purchase of the 90% beneficial interest in the Litigation Trust.[25]  This game of semantics fails.  Kaiser cannot have it both ways: either the Litigation Trust was a "use" of the Debtors' property, or it was a "sale" – it cannot change based on the procedural posture of this matter.  Specifically, Kaiser maintains that the "assignment" of the Trust Causes of Action *into the Litigation Trust* was not a sale.[26]  At the same time, Kaiser maintains that the transfer of the beneficial interest *of the Litigation Trust* was a "sale."[27]  There is no rational distinction between the two: if the transfer of the claims into the Litigation Trust was a "use" of property so too is the transfer of the beneficial interest in the Litigation Trust to Kaiser.  Conversely, if the transfer of the 90% beneficial interest of the Litigation Trust was a "sale," then the transfer of the claims into the Litigation Trust was also part of that "sale."  In short, the transfer to Kaiser of the beneficial interest of the Litigation Trust was no more of a "sale" than the transfer of the Trust Causes of Action into the Litigation Trust.  Kaiser cannot maintain both arguments at once to prevent the Court from reviewing the Order.

>           ii.        **Section 363(m) Does Not Moot Boeing's Appeal.**

Even if section 363(m) protects from appellate review so-called "integral" provisions of an order that are not themselves sales—which it does not—section 363(m) would not moot

---

[24] *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008) (Given that Congress omitted the use "'use' prong of authorization."); *In re Joshua Slocum*, 922 F.2d 1081, 1086 (3d Cir. 1991) (section 363(m) mootness did not apply because the issue before the court was not a challenge to an assignment of a lease but, rather, whether an entity had the authority to excise a provision of the lease).
[25] *See* Kaiser Brief, at 17.
[26] *See supra* at note 19.
[27] *See* Kaiser Brief, at 17.

8

Boeing's appeal because the challenged provisions are not "integral" to the transaction.  In any event, even if the non-sale provisions were "integral" to the transaction, Kaiser's reliance on them was not justified and, thus, section 363(m) does not apply.

### 1.   Kaiser's Argument Regarding Integral Provisions Fails as a Matter of Law.

Recognizing that Boeing does not seek appellate review of a "sale" provision of the Order, Kaiser on page eighteen of its brief argues that section 363(m) protects everything that is part of the sale "package," which includes any provision supposedly "integral" to the sale.[28] Such argument fails for four reasons.  *First*, Kaiser's argument ignores the plain language of section 363(m), which provides the following in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a *sale* or *lease* of property does not affect the validity of a *sale* or *lease* under such authorization . . ..[29]

Given that Congress omitted the use "'use' prong of authorization," "Congress intended that § 363(m) address only changes of title or other essential attributes of a sale . . . .  The terms of those sales . . . are not protected."[30]  *Second*, accepting Kaiser's argument would allow Kaiser to "mask an improper condition of the transfer—avoiding appellate review—by cloaking it as an essential and inseparable part of a sale."[31]  *Third*, Kaiser has not cited one case from the Third Circuit or this Court to support is "integral to the sale".  Instead, Kaiser relies upon *Anheuser-Busch, Inc. v. Miller (In re Stadium Management Corp.)*, 895 F.2d 845 (1st Cir. 1990) and *Official Committee of Unsecured Creditors v. Trism, Inc. (In re Trism, Inc.)*, 328 F.3d 1003 (8th Cir.

---

[28] *See* Kaiser Brief, at 18-19.
[29] 11 U.S.C. § 363(m) (emphasis added).
[30] *Clear Channel Outdoor*, 391 B.R. at 36-37.
[31] *Id.*

9

2003), unpersuasive and readily distinguishable cases decided outside the Third Circuit.[32]
*Stadium Management* was decided by the First Circuit, which applies a stricter standard for
section 363(m) appellate review than the Third Circuit.[33]  Moreover, the portion of the decision
in *Stadium Management* to which Kaiser cites involves the assignment of a lease being protected
by section 363(m), which in the Third Circuit would have been protected by section 363(m) as a
"sale" in any event.[34]  *Trism*, which has *never* been cited by a court in the Third Circuit, is
completely distinguishable because in that case the bankruptcy court made a factual finding that
the sale could not be consummated without such non-sale provisions.[35]  Here, the Bankruptcy
Court did not find—and based on the record could not have found[36]—that the sale would not
have been consummated without the inclusion of the Litigation Trust or paragraph four of the
Order.  As such, section 363(m) does not protect non-sale provisions from appellate review.

---

[32] The cases cited by Kaiser elsewhere in its brief from within the Third Circuit are unavailing.
The Third Circuit in *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209
F.3d 291 (3d Cir. 2000) did *not* find that the assignment of the lease was "integral to the sale" as
stated on page 15 of Kaiser's brief.  Instead, the Third Circuit reasoned that the lease was
assigned but also sold pursuant to section 363(b) (given that it was property of the estate), and
such sale was, therefore, protected by section 363(m). *Rickel Home Ctrs.*, 209 F.3d 291, 300-03
(section 363(m) applied because landlord directly challenged a bankruptcy court's decision to
authorize the "sale" of a lease under section 363 and the associated modification of the lease as
part of the "sale"). The other two cases fare no better because they both involve direct challenges
to transactions, which were found to be "sales." *Krebs Chrysler-Plymouth, Inc. v. Valley Motors,
Inc.*, 141 F.3d 490, 499-500 (3d Cir. 1998) (section 363(m) applied because (i) recoupment
would amount to a refund of purchase price directly affecting a term of the sale and (ii) reversing
the rejection of the buy-sell agreement would "necessarily require the subsequent assumption
and assignment of the underlying franchise" which is considered a "sale"); *Pittsburgh Food &
Beverage, Inc. v. Ranallo*, 112 F.3d 645, 549-50 (3d Cir. 1997) (all of the remedies sought in
lawsuit including a challenge to the transfer and damages--which the court found would change
the sale price--would directly affect the terms of the sale).
[33] *Pittsburgh Food & Beverage, Inc.*, 112 F.3d at 651 (recognizing that First Circuit applies a
different standard).
[34] *Rickel Home Ctrs., Inc*, 209 F.3d at 303.
[35] 328 F.3d at 1007.
[36] Transcript, at 48:12-13; *id.* at 47:13-17.

10

### 2.   Kaiser Cannot Show that the Litigation Trust Was Integral to the "Sale."

Even if section 363(m) protected purportedly "integral" non-sale provisions from appellate review, Boeing would still be entitled to appellate review because Kaiser cannot point to any *evidence* that the challenged provisions were in fact "integral" to the sale. The testimony on which Kaiser relies is equivocal at best and, fairly read, contradicts the notion that Kaiser relied on the formation of the Litigation Trust at all.[37]   Indeed, contrary to Kaiser's assertion, Kaiser's representative did *not* testify that Kaiser's board conditioned its consent to the transaction on the "ability of the Litigation Trust to pursue those causes of action."[38]   Rather, Kaiser's representative testified that Kaiser had not even valued the "speculative"[39] causes of action against Boeing[40] or decided whether to pursue them at all.[41]

Indeed, any asserted reliance by Kaiser on the Litigation Trust's ability to pursue claims against Boeing would have been entirely unreasonable in light of paragraph five of the Order which directly addresses the claims against Boeing and provides as follows:  "*Notwithstanding anything to the contrary in this Order*, the APA, or the Litigation Trust Agreement: . . . (ii) *the vesting in the Litigation Trust of Trust Causes of Action against the Boeing Parties* (and against any current or former officers, directors, employees, agents or attorneys of the Boeing Parties, in such capacity) *shall be subject to any applicable defense thereto* (including, without limitation,

---

[37] *Compare* Kaiser Brief, n.81 *with* Transcript, at 47:13-24 and 49:9-15 (Kaiser's representative never rejected taking out Litigation Trust altogether stating that it would be a "decision for the board to make, not for me to make" regarding removing the litigation trust entirely).
[38] *Id.*
[39] Transcript, at 24:17-25; 27:6-11 (testimony by Debtors' own representative).
[40] *Id.* at 47:8-12.
[41] *Id.* at 40:8-10 ("[B]ut *before deciding to pursue them or not* we have to really do a cost benefit also as what's it going to cost.") (emphasis added)

11

recoupment)."[42] Thus, paragraph five—which was crafted in response to Boeing's objections and specifically governs the claims against Boeing (regardless of the more general provisions in paragraph four that apply to other parties)—leaves as an open question whether the Litigation Trust will be "able" to pursue those causes of action at all.[43]

### 3.   Kaiser Cannot Show that It Justifiably Relied on the Order.

Kaiser's argument also fails because it cannot show that it has *justifiably relied* on the Order with respect to the Litigation Trust. *First*, as discussed above, as a matter of law, based on paragraph five (ii) of the Order, Kaiser cannot have justifiably relied on the Order as immunizing the formation of the Litigation Trust and vesting of claims in the Litigation Trust from review.[44]

*Second*, the purported acts that Kaiser allegedly took in reliance in "consummating the transaction and taking . . . additional steps" do not amount to *detrimental reliance* associated with the *formation of the Litigation Trust*.[45] Most of the items Kaiser lists relate to the *alleged sale of the business* and not to the *Litigation Trust* and are therefore irrelevant.[46] The only items relating to the Litigation Trust are (v), (vi), (vii), and (viii).

As to item (v) (*i.e.*, causes of action vesting into the Litigation Trust), reliance on the causes of action vesting does not create any prejudice for Kaiser because they were not Kaiser's

---

[42] Order ¶ 5(ii) (emphasis added).

[43] *See In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 329 (3d Cir. 2010) (specific provisions trump general provisions); *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 667 (D. Del. 2009) (Bumb, J.) (agreeing that definition of "notwithstanding" is "[i]n spite of, without regard to or prevention by" and that the term's use in statute "carve[d] out a subset of administrative expenses . . . exempting this special class from the usual burdens and procedures" articulated in a general provision).

[44] Further, given that it continues to maintain that the "vesting of the causes of action against Boeing in the Litigation Trust [does not] violate any applicable anti-assignment restrictions under state law," it cannot show detrimental reliance on paragraph 4 of the Order.  Kaiser Brief, at 18.

[45] *See* Kaiser Brief, at 13-14.

[46] *See id.*

12

causes of action to begin with; Kaiser is a vicarious speculator in the claims and is not seeking

any redress for a previous wrong done to Kaiser. As to (vi), appointing the Liquidation Trustee

and Trust Oversight Committee of the Litigation Trust hardly constitutes detrimental reliance.

With respect to (viii), the filing by counsel simultaneously employed by the Debtors of the *9

count, 91 page, 203 paragraph complaint seeking over $100 million of damages against Boeing*

in Alabama only *one day* after the formation of the Litigation Trust and only *eight days* after the

Debtors' representative and Kaiser's representative testified under oath that they had not even

evaluated the claims against Boeing shows that the lawsuit had already been prepared long

before Kaiser's involvement with these cases.[47]

As to (vii) and Kaiser allegedly "capitaliz[ing] the Litigation Trust with an initial

$500,000," there is no evidence that Kaiser cannot get this money back. Accordingly, counsel

for Boeing called and sent correspondence to counsel for the Litigation Trust and Kaiser asking

them for information about the alleged $500,000 capitalization of the Litigation Trust.[48] Counsel

for the Litigation Trustee never responded.

---

[47] *See* Notice of Filing Compl. [D.I. 510]. Counsel to the Litigation Trust in the Alabama case against Boeing was also counsel to the Debtors when the Litigation Trust filed the complaint against Boeing. *Compare* Order to Retain Ordinary Course Professionals Pursuant to Section 105(a), 327, 328 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014 [D.I. 93] *with* Declaration in Connection with the Order to Retain Ordinary Course Professionals attached at Ex. A to Affidavit of Robert M.D. Mercer in Support of the Boeing Co.'s Brief in Opposition to Kaiser Aircraft Industries, Inc.'s Motion to Dismiss Appeal as Moot [11 U.S.C. § 363(m)] ("Affidavit"). Clearly, that law firm had prepared the complaint long before Kaiser's involvement.
[48] Correspondence from Mercer to Williams dated November 8, 2011 attached to the Affidavit, at Ex. C; Correspondence from Mercer to Patterson dated November 8, 2011 attached to the Affidavit at Ex. D.

Counsel for Kaiser sent counsel for Boeing a letter stating the following:

> Kaiser *anticipates* that the funds will be utilized by the Litigation Trust in their entirety and accordingly does not *expect* to receive any of the advanced funds back.[49]

Thus, contrary to Kaiser's position in its brief, Kaiser merely "*anticipates* that the funds will be utilized by the Litigation Trust" and "does not *expect* to receive any of the advanced funds back."[50]  Accordingly, there is no evidence that the Litigation Trust has spent the money or that Kaiser cannot recover it.  Consequently, there has been no detrimental reliance.[51]

**B.      Given that Boeing Did Not Have a Full and Fair Opportunity to Litigate the Issues  Which Led to the Bankruptcy Court's Incorrect Ruling, It Is All the More Reason that the Court Should Consider the Merits of Boeing's Appeal.**

It is not surprising that the Bankruptcy Court erred given that the Debtors and Kaiser raised the *Cybergenics* issue at the eleventh hour, which did not give Boeing a full and fair opportunity to litigate the issues.  Under these circumstances, review by an Article III court is particularly appropriate.

**i.      Boeing Did Not Have a Full and Fair Opportunity to Litigate the Issues.**

The Debtors and Kaiser waited until the last minute to raise *Cybergenics* when they could have easily told Boeing about it *six days* (if not an *entire month*) before and were required by Rule 9013 of the Federal Rules of Bankruptcy Procedure to have included it in the motion in the first place, which they did not do.  To make matters worse, the Debtors and Kaiser insisted that

---

[49]  Correspondence from Patterson to Mercer dated November 10, 2011 attached to the Affidavit, at Ex. E.

[50]  *Id.*

[51]  If the Court is otherwise inclined to grant Kaiser's motion, Boeing would request that the Court remand this matter to the Bankruptcy Court, so Boeing can conduct discovery regarding any alleged detrimental reliance by Kaiser, and the Bankruptcy Court can make findings of fact.

14

the Court rule on the issue at the hearing even though there was no *bona fide* reason for such a

rushed ruling.[52]

In considering these issues, it is important to focus on the events leading up to the

Hearing:

- On July 31, 2011, according to time records for Debtors' counsel, they "finalize[d] revised Kaiser APA".[53]
- On August 19, 2011, without advance notice to Boeing, the Debtors filed the original motion and a motion for expedited consideration of such motion.[54]
- On August 22, 2011, the Debtors filed their amended motion which (with exhibits) totaled 158 pages, and served 52 copies by first class mail and 74 copies by overnight mail.[55] The only difference between the original motion and the amended motion was non-substantive: the proposed sale order in the amended motion refers to "Litigation Trust" while the motion refers to the "Boeing Litigation Trust."[56]

---

[52] Even counsel for the official committee of unsecured creditors, which *supported* the sale, acknowledged that "the sale motion was brought on a *very* expedited basis." Transcript, at 91:9 (emphasis added).

[53] *Sixth Verified Monthly Application of Alston & Bird LLP as Counsel for the Debtors and Debtors-In-Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period from July 1, 2011 through July 31, 2011* (the "Alston & Bird Fee Application") [D.I. 487], at Ex. A, p. 3 of 10.

[54] *See Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of the Sale Order (I) Approving the Sale of Assets, Including the Assumption and Assignment of Contracts, Free and Clear of All Liens, Claims, and Interests, and (II) Approving the Form and Manner of Notice of Assumption and Assignment of Contracts* ("Original Sale Mot.") [D.I. 450]; *see also* Mot. to Expedite.

[55] Affidavit of Service [D.I. 459], Exs. A and B, attached to the Affidavit, at Ex. B.

[56] *Compare* Original Sale Mot., at Ex. A, ¶ 2 (referring to the "Boeing Litigation Trust") *with Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein* ("Modified Sale Mot.") [D.I. 451], at Ex. D, ¶ 2 (referring to the "Litigation Trust"). *See also Objection of the Boeing Company to Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Seeking Entry of an Order Approving the Sale of Substantially All of the Debtors' Operating Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and*

15

- On August 24, 2011, counsel for Boeing called counsel for the Debtors to express Boeing's concerns about the relief sought in the motion. Later that day, counsel for Boeing sent Debtors' counsel an electronic mail setting forth such concerns in detail, which were substantially identical to those raised in Boeing's objection.[57]

- According to the time records for the Debtors' counsel, they immediately started (i) researching the assignability of claims and (ii) working on their reply brief.[58] However, despite repeated requests from Boeing to share the Debtors' response to the concerns raised by Boeing, the Debtors never responded with any meaningful information.

- On August 29, 2011, without having received any meaningful response to its concerns raised five days earlier, Boeing filed its objection to the motion.[59]

- On August 31, 2011, less than 24 hours before the hearing on the motion, the Debtors and Kaiser filed motions for leave to file extensive replies (18 pages for the Debtors and 13 pages for Kaiser) raising *Cybergenics* for the first time.[60]

- At the hearing the following day, the Bankruptcy Court relied almost completely on *Cybergenics* to overrule Boeing's objection: "With respect to Mercer, Mr. Mercer's claim that this has never been done outside of a plan, I simply say *Cybergenics*."[61]

Based on the foregoing, it is clear that the Debtors and Kaiser could have easily told

Boeing about the *Cybergenics* issue on August 24, 2011 (when the Debtors started preparing

their reply brief)[62] if not on July 31, 2011 (when the Debtors finalized the Asset Purchase

Agreement).[63] Moreover, the eleventh hour filing of reply briefs asserting new arguments

---

*Interests to Kaiser Aircraft Industries, Inc. and Authorizing the Debtors to Establish a Litigation Trust and Vest Certain Claims Therein [Corrected Version]* ("Boeing Objection to Sale Mot.") [D.I. 464], at 1 n.1. The only explanation for such effort is to obscure the fact that the Boeing would be affected by the motion.

[57] *See* Boeing Objection to Sale Mot., at Ex. B.

[58] *Seventh Verified Monthly Application of Young Conaway Stargatt & Taylor, LLP as Bankruptcy Counsel for the Debtors and Debtors-In-Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period August 1, 2011 through August 31, 2011* (the "Young Conaway Fee Application") [D.I. 515], at Ex. A, p. 16 of 23.

[59] *See* Boeing Objection to Sale Mot.

[60] *See* Debtors' Reply Mot.; *see also* Kaiser's Reply Mot.

[61] Transcript, at 112:12-14.

[62] *See* The Young Conaway Fee Application, at Exhibit A, p. 16 of 23.

[63] *See* The Alston & Bird Fee Application, at Exhibit A, p. 3 of 10.

16

violates Rule 9013 of the Federal Rules of Bankruptcy Procedure, which provides that a motion "shall state with *particularity* the grounds therefore."[64] Indeed, the motion, itself, never once mentions *Cybergenics* or the equitable powers of a bankruptcy court as a basis for the requested relief.[65] *In fact, the basis for relief requested section of an earlier sale motion filed by the Debtors, which did not even request the formation of a liquidation trust,[66] is identical in all material respects to such section in the motion here.[67]*

To make matters worse, there was no real emergency or exigency in the first place. Although the Debtors asserted that the Hearing had to proceed on September 1, 2011, the Hearing could have been delayed by a few days or even two weeks so as to allow the parties sufficient time to address the new and completely novel arguments raised at the eleventh hour by the Debtors and Kaiser. The purported reasons for the claimed emergency were that (i) the Debtors were about to run out of cash; (ii) the consensual use of cash collateral expired on August 31, 2011; (iii) the Debtors were operating on a negative cash flow basis; (iv) the deadline to assume or reject the Birmingham Airport facility lease expired on September 13, 2011; and (v) the Debtors were about to lose contracts.[68] These purported "emergencies" fail for at least five independent reasons. *First*, the Debtors' advisor testified that they had an additional four to six weeks of cash.[69] *Second*, although the lender stated that it would not extend the consensual

---

[64] Fed. R. Bankr. P. 9013 (emphasis added).

[65] *See* Original Sale Mot.

[66] *See Debtors' Motion Pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 2002-1 and 6004-1, Requesting Entry of the Sale Order (i) Approving the Sale of Assets, Including the Assumption and Assignment of Contracts and Leases, Free and Clear of All Liens, Claims, and Interests and (ii) Approving the Form and Manner of Notice of Assumption and Assignment Contracts Filed by Alabama Aircraft Industries, Inc.* (the "Earlier Sale Mot.") [D.I. 279], at ¶¶ 32-42.

[67] *Compare* Earlier Sale Mot., at ¶¶ 32-42 *with* Modified Sale Mot., at ¶¶ 34-45.

[68] Mot. to Expedite, at ¶¶ 6-8.

[69] Transcript, at 60:21-61:2.

17

use of cash collateral, it had previously made similar threats and subsequently backed down.[70]

Moreover, it would be completely irrational for the lender to refuse to keep funding (after having

done so for months) just because an identified sale was postponed for two weeks. *Third*, the

Debtors had been operating on a negative cash flow basis for some time before the Hearing.[71]

*Fourth*, although the Debtors asserted that the lease deadline was a basis for "additional

urgency," the Debtors never even asked the landlord in advance if it would agree to a consensual

extension of the deadline.[72] *Fifth*, the risk of losing contracts was a risk that the Debtors took

during their entire bankruptcy cases – it is hardly a reason to justify prejudicing Boeing's

rights.[73]

### ii.     The Bankruptcy Court Clearly Erred in Its Ruling.[74]

Perhaps because of the rushed nature of the Hearing, the Bankruptcy Court incorrectly

relied on the *en banc* decision in *Cybergenics* in approving the formation of the Litigation Trust.

The Bankruptcy Court's analysis of Boeing's entire objection amounted to the following: "With

respect to Mercer, Mr. Mercer's claim that this has never been done outside of a plan, I simply

say *Cybergenics*."[75] Yet, *Cybergenics* did not involve the creation of a litigation trust much less

one being formed outside of a plan.[76] And the court in *Cybergenics* did not hold that a

bankruptcy court could "designate third parties to prosecute estate causes of action on behalf of

the estate when the debtor is unable or unwilling to do so."[77] Indeed, the Third Circuit in

---

[70] *See* March 24, 2011 Hearing Transcript [D.I. 144], *compare* 23:6-11 *with* 32:4.
[71] Mot. to Expedite, at ¶ 6.
[72] *See* Transcript, at 26:20-27:5; 75:18-20.
[73] *See* Transcript, at 61:7-8.
[74] Boeing reserves the right to – and will – address the merits of the appeal in more length in the merits briefs.
[75] Transcript, at 112:12-14.
[76] *See generally* 330 F.3d 548.
[77] *Compare* 330 F.3d at 553 *with* Kaiser Brief, at 11.

*Cybergenics* only held (erroneously)[78] that a bankruptcy court may approve derivative standing for creditors' committees to pursue avoidance actions in cases where a debtor-in-possession unreasonably refuses to pursue an avoidance claim after the bankruptcy court determines that the claims are colorable.[79] Since, among other things, (i) the Litigation Trust is not a creditors' committee and (ii) there is no evidence that the Debtors refused to bring the claims (much less evidence that the debtors or a chapter 7 trustee could not pursue the alleged claims) or that the claims were colorable, the *Cybergenics* holding does not apply.

Even the rationale behind *Cybergenics* is inapplicable here. The reasoning of the majority in that case relied heavily on the fact that the party involved was a creditors' committee.[80] Kaiser of course cannot show at the time the Order that the Litigation Trust was a creditors' committee or even a creditor.[81] In addition, the equitable powers of bankruptcy courts rationale—the discussion of which was a minor part of decision and is the only section of the decision to which Kaiser has pointed—also does not support the Bankruptcy Court's ruling. In terms of the equitable powers rationale, it was very important to the Third Circuit that the

---

[78] Boeing reserves its right to challenge the holding and reasoning of *Cybergenics*.
[79] 330 F.3d at 553.
[80] 330 F.3d at 559-560 ("need to interpret chapter 11 as a whole" rationale is based on sections 1109(b), 1103(c)(5), and 503(b)(3)(B)); *id.* at 560-62 (section 1109(b) rationale applies to creditors' committees because they are specifically listed in that section but at the very least would require that the proposed plaintiff be a "party in interest"); *id.* at 562-63 (section 1003(c)(5) only applies to creditors' committees); *id.* at 562-66 (section 503(b)(3)(B) rationale applies directly to creditors and creditors' committees); *id.* at 569-70 (pre-code practice rationale applies only applies to creditors); *id.* at 572-580 (policy analysis focuses on creditors' committees – section IV of the opinion is entitled "Does Derivative Standing for Creditors' Committees Advance Congress's Goals?")
[81] Indeed, Kaiser could not even demonstrate that the Litigation Trust was a party in interest because the Litigation Trust had not even been formed and, therefore, the Litigation Trust could not have had a legal stake in the outcome of the bankruptcy cases. 11 U.S.C. § 1109(b); *see also* Collier on Bankr. (16th ed. 2010) ¶ 1109.02[1] (party in interest possesses significant legal stake in outcome of the case). Even if the Litigation Trust had been formed, it would not have been a party in interest any more than a prospective asset purchaser. *In re Crescent Mfg. Co.*, 122 B.R. 979, 981 (Bankr. N.D. Ohio 1990).

19

bankruptcy court in *Cybergenics* found that the debtor refused to bring claims that the

bankruptcy court found would benefit the estate.[82] Here, the Bankruptcy Court did not find that

the alleged claims against Boeing would benefit the estate because neither the Debtors nor Kaiser

identified them, and there was no evidence that the Debtors or a chapter 7 trustee could not have

asserted them as effectively as the Litigation Trustee.  Consequently, the Bankruptcy Court's

incorrect reliance on *Cybergenics* heightens the need for appellate review by an Article III court.

## V.   CONCLUSION

For the foregoing reasons, this Court should DENY Kaiser's Motion to Dismiss the

Appeal.

DATED: November 14, 2011.

*/s/ Christopher D. Loizides*
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Email:        loizides@loizides.com

Robert M.D. Mercer
(*Pro Hac Vice Application Pending*)
Eric P. Schroeder
(*Pro Hac Vice Application Pending*)
Bryan Cave LLP
One Atlantic Center, 14th Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309-3488
Telephone:   (404) 572-6600

Attorneys for the Boeing Company

---

[82] 330 F.3d at 568.

20

6176971.3