|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| ALABAMA AIRCRAFT INDUSTRIES, INC. | ) ) ) ) | HONORABLE JOSEPH E. IRENAS CIVIL ACTION NO. 11-01003 (JEI) BANKRUPTCY NO. 11-0452(PJW) |
| Debtor. | ) ) ) | |
| THE BOEING COMPANY | ) ) ) | **OPINION** |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| KAISER AIRCRAFT INDUSTRIES, INC. | ) ) ) ) ) | |
| Appellee. | ) ) | |

**Appearances**:

BRYAN CAVE LLP
By: Robert M.D. Mercer, Esq.
Eric P. Schroeder, Esq.
One Atlantic Center, 14th Floor
Atlanta, GA 30309-3488
    Counsel for The Boeing Company

LOIZIDES, P.A.
By: Chris Loizides, Esq.
1225 King Street, Suit 800
Wilmington, DE 19801
    Counsel for The Boeing Company

KLEE TUCHIN BOGDANOFF & STERN LLP
By: Thomas E. Patterson, Esq.
1999 Avenue of the Stars, Suite 3900
Los Angeles, CA 90067
    Counsel for Kaiser Aircraft Industries, Inc.

PACHULSKI STANG ZIEHL & JONES LLP

By: Bruce Grohsgal, Esq.
919 North Market Street, 17th Floor
Wilmington, DE 19801
    Counsel for Kaiser Aircraft Industries, Inc.

**IRENAS**, Senior District Judge[1]:

This matter comes before the Court on The Boeing Company's ("Boeing") appeal from the bankruptcy court's Sale Order of September 6, 2011. Pending before the Court is Kaiser Aircraft Industries, Inc.'s ("Kaiser") Motion to Dismiss the appeal as moot. For the reasons that follow, the Court will grant the Motion and dismiss the appeal.

**I.**

Alabama Aircraft Industries, Inc., Alabama Industries, Inc.-Birmingham, and Pemco Aircraft Engineering Services, Inc., (collectively, the "Debtors") existed for nearly sixty years as an aerospace and defense company servicing the U.S. Government. An inability to replace expiring contracts led to a substantial drop in revenue. After several failed attempts to amend their collective bargaining agreement and refinance their working capital, the Debtors filed for bankruptcy.

A sale procedure, assisted by an investment bank, garnered two unsuccessful bids. The Debtors subsequently reached out to

---

[1] Of the District of New Jersey, sitting by designation.

Kaiser and agreed to sell nearly all of their assets pursuant to an Asset Purchase Agreement ("Agreement"). The only material economic term of the Agreement relevant to the instant motion is Kaiser's establishment of a Litigation Trust ("Trust"), pursuant to a Litigation Trust Agreement ("Trust Agreement"), wherein Kaiser vests certain estate causes of action against Boeing and others.[2] The Trust Agreement calls for Kaiser to fund the litigation and retain 90% of any beneficial interest accrued therefrom; the Debtors' estates receive the remainder with a maximum collection of $30 million.

An expedited bankruptcy proceeding was held on September 1, 2011 because the deadline to assume the lease of the Debtors' operating facility was set to expire September 13, 2011. The bankruptcy court orally granted the Sale Motion towards the conclusion of the hearing. (September 1, 2011 Hearing Transcript ("Transcript") at 112:6-14.) Because the Debtors then committed to wait one week before signing the Agreement, the bankruptcy court ordered that Fed. R. Bankr. P. 6004(h)'s automatic fourteen day stay would not apply. (Tr. at 113:1-13.) Boeing's subsequent Oral Motion to stay the sale was denied. (Tr. at

---

[2] The Agreement's two other material economic terms are: I) Kaiser pays $500,000 of cash consideration to the Debtor's estates at the closing of the transaction, and II) Kaiser acquires substantially all of the operating assets of the Debtors, while the Debtors would retain their existing accounts receivable and proceeds of the work in process generated prior to the closing.

3

118:22-25; 119:1-16.)[3]  After the Agreement was executed, and without obtaining a stay in this Court, Boeing filed its Notice of Appeal.  Kaiser subsequently filed the instant Motion to Dismiss.

**II.**

The Court has jurisdiction to hear this appeal of the bankruptcy court's final order pursuant to 28 U.S.C. § 158(a).  The Court reviews *de novo* the bankruptcy court's legal conclusions, *In re Fairfield Exec. Assoc.*, 161 B.R. 595, 599 (Bankr. D.N.J. 1993), and leaves undisturbed its factual determinations unless they are clearly erroneous.  Fed. R. Bankr. P. 8013.

**III.**

Section §363(m) of the Bankruptcy Code requires parties seeking to reverse or modify authorized sales of estate property

---

[3] The transcript reads:
Mr. Loizides: "We obviously haven't talked to our client about the court's ruling and I don't view the results today as being – you know, some issues essentially went out way, Your Honor, so I don't know that there is going to be an appeal, but what I have done in the past in circumstances such as this is the rules obviously require that you request a stay pending appeal from the Bankruptcy Court first and typically in situations like this, the Bankruptcy Court, quite understandably is disinclined to grant that stay.  I guess what I would ask is is essentially, would the Court accept what amounts to an oral motion to stay, pending appeal?
The Court: Okay. Denied."
Tr. at 118:22-25; 119:1-16.

4

to obtain a stay pending appeal.  11 U.S.C. §363(m).[4]  Although a majority of courts of appeals deem an appeal moot *per se* in the absence of a stay, the Third Circuit requires finding, before dismissal, that (1) the underlying sale was not stayed pending appeal, and (2) reversing or modifying the Bankruptcy Court's authorization would affect the validity of the sale.  *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 498-99 (1998).

Kaiser argues that because Boeing's appeal of the Sale Order was not stayed, and Boeing's requested relief of vacating the Trust would greatly affect the validity of the sale, Boeing's appeal must be dismissed as moot.  Boeing, in turn, contends that §363(m) does not apply because the statute protects only sales, not uses, and the creation of the Trust was exclusively a use.  Consequently, the two questions that dictate whether or not this appeal is moot are: A) was the establishment of the Trust, and Kaiser's acquisition of 90% of the beneficial interest therein, a sale of property requiring §363(m) protection, and, if it was a sale, B) would granting Boeing's requested relief affect the

---

[4] 11 U.S.C. 363(m) provides, in full:
The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

5

validity of the sale? Because both questions are answered in the affirmative, the appeal is dismissed as moot.

A.

Boeing asserts that the Debtors' creation of the Trust is not a sale deserving of §363(m) protection because the bankruptcy court, in its Sale Order, ruled that it was a "use of the Debtors' property."[5] Boeing argues that the ruling prevents this Court from affording the creation of the Trust §363(m) protection because only sales, and not uses, are afforded such protection. Boeing's argument is unconvincing.

First, it appears from the Sale Order and the Transcript that the bankruptcy court in fact found that §363(m) protected the creation of the Trust. The Sale Order holds that the Agreement and the Trust Agreement "have been entered into by the parties in good faith within the meaning of 363(m)" and that Kaiser is "a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and entitled to the protections thereof."[6] Moreover, the court specifically ruled during the hearing that the establishment of the Trust was protected by

---

[5] Sale Order at Page 6, Paragraph K: "The establishment of the Litigation Trust pursuant to the terms of the APA and the Litigation Trust Agreement is a fair and appropriate use of the Debtors' property."

[6] Sale Order at Page 6, Paragraph L.

§363(m). (Tr. at 113:5-9.)[7] Thus, Boeing is inaccurate when it claims that the bankruptcy court ruled that the creation of the Trust was not a sale.

Second, even if this Court held that the bankruptcy court found the establishment of the Trust a use, it is clear that such a conclusion would be erroneous. The transaction's documentation shows that the Debtors included in their sale of all major assets the creation of the Trust and Kaiser's possession of 90% of the beneficial interests therefrom. The Trust Agreement refers to Kaiser throughout as "Purchaser" and states that the establishment of the Trust is "pursuant to the [Asset] Purchase Agreement." Additionally, the Agreement identifies 90% of the Trust's beneficial interest as a "Purchased Asset" and specifically conditions the closing of the asset sale upon the creation of the Trust and the bankruptcy court's corresponding approval.

Even more convincingly, the totality of the transaction strongly indicates that the establishment of the Trust was part and parcel of the Debtors' sale to Kaiser. The Debtors were quickly running out of capital. They faced the option of selling all major assets or being forced to liquidate. (Tr. at 22:8-19; 81:12-22.) To receive the highest possible purchase price from

---

[7] The Transcript reads: Mr. Mercer: Your Honor, I just want to make – ask for clarification as to the Court's ruling. Is the Court ruling that 363(m) applies with the establishment of litigation trust? The Court: Yes. Tr. at 113:5-9

7

Kaiser, they included in the asset sale the creation of the Trust and a 90% stake in its beneficial interest. Neither the complexity of the transaction, nor the Debtors' retention of 10% of the Trust's beneficial interest, dictates finding otherwise.

Lastly, even if we were to describe the Trust as a use of estate property rather than an outright sale, there is support in this Circuit that transactions integral to a sale deserve §363(m) protection whether they themselves are properly referred to as sales under §363(b). *See Cinicola v. Scharffenberger*, 248 F.3d 110, 125-26 (3d Cir. 2001) (providing the assumption and assignment of employment contracts §363(m) protection because they were "inextricably intertwined" with the Debtor's sale of assets); *Official Comm. of Unsecured Creditors v. Chase Manhattan Bank* (*In re Charter Behavioral Health Sys., LLC*), 45 Fed. Appx. 150, 151 n.2 (3d Cir. 2002) (affording §363(m) protection to the assignment of Medicare provider agreements because they were "inextricably intertwined" to the sales of the Debtors' hospitals). Boeing is correct that this precedent pertains only to the assignment of executory contracts and unexpired leases assigned under 11 U.S.C. §365. *See also Collier on Bankr.* (16th ed. 2010) ¶363.11 ("The protection provided by section 363(m) applies not only to sales of property of the estate but also to assignments of leases..."). Nonetheless, such precedent is persuasive for two reasons. First, the instant case is

8

overwhelmingly analogous to *Cinicola*. Just as in *Cinicola,* where the underlying sale of the Debtors' assets depended upon the successful assignment of its employment contracts, here the sale of assets is conditioned upon the vesting of the estates' causes of action in the Trust and Kaiser's beneficial ownership of 90% therein. The Third Circuit's decision to afford protection in the former case strongly indicates that such protection is appropriate in the latter.

Second, narrowly circumscribing §363(m) protection, as Boeing proposes, undercuts the purpose of the statute, which this Circuit has defined as "not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely." *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). Another court's attempt to limit such protection to only instances of "changes of title", *Clear Channel Outdoor, Inc. v. Nancy Knupfer* (*In re PW, LLC*), 391 B.R. 25, 35 (B.A.P. 9th Cir. 2008), has been summarily rejected. *See In re Nashville Senior Living, LLC* (B.A.P. 6th Cir. 2009) (refusing to follow *Clear Channel* because it "cited no case law for its conclusion and the overwhelming weight of authority disagrees with its holding..."). Lastly, Boeing's argument that parties will shield improper conditions of sale from appellate review by claiming that they are integral to the transaction ignores the fact that

9

§363(m) provides review of authorized sales for those parties that obtain a stay. Consequently, the creation of the Trust is entitled to §363(m) protection.

B.

Having concluded that the Debtors' formation of the Trust is deserving of §363(m) protection, and recognizing that its execution was not stayed, we must now determine whether granting Boeing its requested relief, vacating the Trust, would "affect the validity of the sale." *Krebs*, 141 F.3d at 499. Courts undertaking this analysis focus on whether relief would impact the transaction as executed by the parties pursuant to the court's authorization. *See id.* (holding that allowing the debtor to reject buy-sell agreement affects the validity of the sale because it would necessitate reversing the subsequent assumption and assignment of the underlying franchises); *United Bank, Inc. v. Howard* (*In re Howard*), Bankr. L. Rep. (CCH) P81,935 (W.D. Pa. 2011) ("awarding return of the property to [creditor] would affect the validity of the sale"). In the present case, it is clear that vacating the Trust would affect the validity of the sale. Because the Agreement is conditioned upon the creation of the Trust, its vacation would nullify the sale and return all assets to the Debtors. Such unraveling is exactly the type of affront to finality that §363(m) seeks to prevent. *See In re*

10

*Abbotts Dairies of Penn.*, 788 F.2d at 147.

Lastly, not only would excising the Trust bring the parties back to their original positions, it would put in jeopardy the monetary investments Kaiser and its parent company have subsequently made: nearly $100,000 in required payments to cure all defaults under assumed contracts and leases; issuing a $100,000 guarantee in favor of the lessor of the Debtors' operating facility; capitalizing Kaiser with an additional $7,000,000; and capitalizing the Trust with an initial $500,000. Moreover, as the Trust has already commenced its litigation in Alabama state court, vacating the sale would put the proper resolution of those claims at risk. It is clear that the relief Boeing requests can only be granted at the cost of the deal's validity.

Accordingly, Kaiser's Motion to Dismiss will be granted.[8]

## IV.

For the reasons set forth above, Kaiser's motion will be granted and Boeing's appeal will be dismissed. The Court will

---

[8] As this appeal is dismissed, we do not reach Boeing's substantive claim, which is that *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487 (3d Cir. 1997) prohibits the creation of the Trust because it constitutes a sale or assignment of pre-judgment tort causes of action in violation of state law. Boeing's position, however, is worth noting for two reasons. First, Boeing's claim shows that even Boeing recognizes that the creation of the Trust constitutes a sale under §363(b), strongly implying that its present argument to the contrary is put forward only to overcome its failure to obtain a stay. Second, this Opinion does not in any way rule on the Trust's standing to sue Boeing in the Alabama state court, where the Trust's claims are being litigated.

enter an appropriate order.

Dated: January 17, 2012

                                                  S/ Joseph E. Irenas

                                                  JOSEPH E. IRENAS, S.U.S.D.J.